537 A.2d 834

**COMMONWEALTH of Pennsylvania**

v.

**Anthony Lee CESSNA, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1987.

Filed Feb. 1, 1988.

90

92

Joseph M. Farrell, Palmyra, for appellant.

John E. Feather, Jr., Assistant District Attorney, Lebanon, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence imposed after appellant was found guilty of first-degree murder. On appeal, appellant challenges the sufficiency of the evidence and claims that the trial court erred in (1) admitting appellant's oral and written statements made to police prior to preliminary arraignment; (2) refusing to permit appellant to cross-examine the wife of the victim as to possible motives; (3) refusing to strike testimony of appellant's former girlfriend concerning the contents of letters written by appellant; and (4) not transferring the case to juvenile court. We find that all of appellant's contentions lack merit and, accordingly, affirm the decision of the trial court.

In the early morning of October 8, 1985, the victim, Richard Neidig, was shot in the head and killed while sleeping in his trailer. After discovering the body shortly after 8:00 a.m. on the same day, Joann Neidig, wife of the victim, called the Pennsylvania State Police, who arrived at approximately 8:30 a.m. and began investigation. At 11:30 a.m. Mrs. Neidig and appellant, who is Mrs. Neidig's son and stepson of the victim, signed a consent form permitting the troopers to search the trailer. After the search, appellant and his mother were transported to police barracks for interviews. Appellant's interview commenced at 4:00 p.m., and he was placed under arrest at 4:55 p.m. At 10:45 p.m., appellant was preliminarily arraigned.

Appellant was formally arraigned on November 6, 1985. Pretrial motions requesting suppression of appellant's confession and transfer of the case to juvenile court were filed and denied. Trial by jury commenced on April 7, 1986; during trial, however, appellant entered into a plea agreement with the district attorney whereby he pleaded guilty to a general charge of murder. On April 18, 1986, after a degree of guilt hearing, the trial court entered a verdict of guilty of murder in the first degree. On February 2, 1987, appellant was sentenced to life imprisonment. This appeal followed.

Appellant first challenges the sufficiency of the evidence to support the premeditation element of first-degree murder. Specifically, appellant contends that his voluntary ingestion of LSD prior to the murder negated the specific intent necessary to sustain a first-degree murder conviction. We note, preliminarily, that in reviewing the sufficiency of the evidence, we must view all the evidence, together with the reasonable inferences gleaned therefrom, in the light most favorable to the verdict winner. *Commonwealth v. Hamilton*, 339 Pa.Super. 1, 488 A.2d 277 (1985). The appropriate test is whether the evidence, when viewed in this light, is sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984).

It is well settled that evidence of a drugged condition, if believed, may operate to negate the intent necessary for a conviction of murder in the first degree. 18 Pa.C.S.A. § 308; *Commonwealth v. Stark*, 363 Pa.Super. 356, 526 A.2d 383 (1987). A defendant, however, must have been so overwhelmed by the drug to the point of losing his faculties so as to be incapable of forming a specific intent to kill. *See id.*, 363 Pa.Superior Ct. at 364, 526 A.2d at 387. Our Supreme Court has declared that evidence of a drugged condition is submitted for consideration to the fact finder, who determines the validity of the claim. *Commonwealth v. Fairell*, 476 Pa. 128, 381 A.2d 1258 (1977). The trier of fact may believe any, all, or none of the testimony offered

at trial. *Commonwealth v. Verdekal,* 351 Pa.Super. 412, 506 A.2d 415 (1986).

 In the instant case, regarding appellant's alleged ingestion of LSD, the appellant testified that he bought the LSD at an unidentified truck stop from someone he did not know. Additionally, appellant never mentioned his LSD experience until at least ten days after after his arrest when appellant's prior counsel found marijuana in appellant's bedroom and asked him if he had taken drugs at the time of the shooting. Also, in the night of the shooting, appellant, while allegedly under the influence of LSD, found the keys to his stepfather's car, took the murder weapon and an extra set of clothes to a friend's house, and acted like "the same Tony [his friend] had always known." Trial transcript at 46.

The trial court, considering the foregoing, acted within its discretion as fact finder and discounted appellant's testimony of drug use and concluded on the basis of the remaining evidence that when appellant "fired the rifle at Richard Neidig's head, he did so with a specific intent to kill." Opinion at 8. We agree that there is sufficient evidence in the record to contradict appellant's assertion that he was so drugged at the time of the shooting that he could not have formed the requisite specific intent. We also agree that there was sufficient evidence to establish that appellant shot his stepfather willfully, deliberately, and with premeditation. *Commonwealth v. Moore,* 473 Pa. 169, 373 A.2d 1101 (1977). As the Commonwealth's brief aptly sets forth:

> The Commonwealth presented testimony from Nannette Beahm, who was the [appellant's] girlfriend until the day of the shooting. The [appellant] had complained to her about his stepfather, that he didn't treat the [appellant] like a son and didn't love him. During the month before the shooting, the [appellant] told her about four times that he was going to "get a silencer gun and shoot him (Neidig) while he was sleeping and put him in his car and then go to a mountain and throw him in the side of a ditch in this mountain." (N.T. Trial, pp. 14–15.) The [appel-

lant] asked her not to tell anyone of his plans. (Id., p. 16.) The Commonwealth also presented testimony from Gary Mull, who said that, two or three times during the month before the shooting, the [appellant] told Mull that he was going to "plug" his [step]father.... In his statement [which was read to the court], the [appellant] said that he took his [step]dad's 30–06 rifle about two days before the shooting and hid it in his closet with the intention of shooting his [step]dad at a later time. He also said he had taken a live 30–06 bullet from the kitchen china closet. He waited until everyone was asleep, went to his [step]dad's room, and sat there with the gun for about ten minutes. He brought the gun up to shoot, but it did not go off because it was not cocked. He cocked the gun, put the barrel a foot to a foot-and-a-half from his [step]dad's head, and fired. He turned on the light and saw that the bullet had mangled the whole top of his dad's head....

Appellee's brief at 3–4. We are satisfied that the Commonwealth presented sufficient evidence to convict appellant of first-degree murder.

■ Next, appellant complains that the trial court erred in not suppressing written and oral statements made by appellant prior to his preliminary arraignment because he was not arraigned within six hours of his arrest. Appellant asserts that he was arrested either at 11:30 a.m., when police searched his trailer, or 2:50 p.m., when he was taken to police headquarters. Thus, appellant concludes, since the preliminary arraignment took place at 10:45 p.m., the introduction of his statements elicited in the interim violated *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) [1].

Our Supreme Court has utilized the following test for determining whether an arrest has occurred:

1. *Davenport* declared that when an accused is not arraigned within six hours after arrest, any declaration from the accused to police officers after arrest but before arraignment is inadmissible evidence.

We have defined an arrest as any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest.

*Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), citing *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963).

Further, we have declared that:

[t]he determination of when an arrest occurs depends on an evaluation of all the surrounding circumstances. [citation omitted] ... [T]he question of when an arrest occurs is determined by an objective standard, namely, the reasonable impression conveyed to the person subjected to seizure or detention rather than the subjective view of such person or of the arresting officer. [Citation omitted] ...

*Commonwealth v. Romeri,* 314 Pa.Super. 279, 460 A.2d 1139 (1983).

Instantly, appellant claims that he was in custody at 11:30 because a police officer searching the trailer told appellant to "stick around." At trial, however, the officer testified that he did not remember telling appellant to remain in the trailer. In fact, appellant walked to a neighbor's house for a sandwich and was gone one-half hour. Further, appellant testified:

[W]hen one of the officers asked us to get our jackets on or whatever we wanted to go out in the yard and stay there to stay out of the way of inside the house so they could carry on their investigation, that we would be just in the way if we were in the house.

Trial transcript at 136.

At 2:30, when the officers had finished processing the crime scene, they asked appellant and his mother to accompany them to the barracks for questioning. On the way to the barracks, the officers stopped at a convenience store which appellant entered alone. Even at the barracks, appellant was not under supervision, was able to move about, and was never told that he could not leave. Trial transcript

at 23. It was only at the conclusion of the interview that appellant was readvised of his rights and was not free to leave.

▮ The instant circumstances, when scrutinized according to the standard delineated *supra*, support the trial court's finding that appellant was not under arrest until 4:55 p.m. Appellant was arraigned within six hours of arrest and, therefore, the statements made during the interim were properly admitted at trial.[2]

Appellant also urges that the trial court erred in sustaining the Commonwealth's objection when appellant tried to cross-examine Joann Neidig as to possible motives on her part for the killing. It is well established that the trial court has broad discretion in ruling on the parameters of cross-examination, and those rulings will not be reversed absent a clear abuse of discretion or error of law. *Commonwealth v. Shirey*, 333 Pa.Super. 85, 481 A.2d 1314 (1984), citing *Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976). Ordinarily, cross-examination of an adverse witness is limited to subjects pursued on direct examination, with few exceptions. *Commonwealth v. Lore*, 338 Pa.Super. 42, 487 A.2d 841 (1984), citing *Commonwealth v. Katsafanas*, 318 Pa.Super. 143, 464 A.2d 1270 (1983); *Com-*

**2.** We note that, in any event, the admission of the inculpatory statements was proper. In *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987), our Supreme Court modified *Davenport*, declaring: The [*Davenport*] rule has been applied on a mechanical basis to violations which bear no relationship to the statement obtained and has shielded the guilty for no reason relevant to the individual circumstances of their case. [Citations omitted.] ... If the statement is obtained within the six hour period, absent coercion or other illegality, it is not obtained in violation of the rights of an accused and should be admissible. In keeping with the underlying objectives of the rule, only statements obtained after the six hour period has run should be suppressed on the basis of *Davenport*. *Id.*, 514 Pa. at 405–06, 525 A.2d at 1182–83. The circumstances surrounding appellant's statements were by no means coercive. Additionally, the utterances occurred well within the six hour period no matter when the arrest is deemed to have taken place. Therefore, the statements would have been admissible in any of the possible time frames.

*monwealth v. Ervin,* 262 Pa.Super. 322, 396 A.2d 776 (1978).

■ Cross-examination may be used to test a witness's story, to impeach credibility, and to probe a witness's motive for testifying. *Commonwealth v. Butler,* 367 Pa.Super. 453, 533 A.2d 105 (1987) citing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Appellant, however, wanted to question Mrs. Neidig about motives for doing the killing rather than motives for testifying. The subject of inquiry was clearly beyond the scope of direct and outside permissible impeachment inquiry. The trial court, therefore, did not abuse its discretion in refusing to permit the testimony. We note that appellant did not exercise his prerogative to call Mrs. Neidig as a defense witness and cross-examine her in this regard.[3]

■ Next, appellant contends that the testimony of Sharon Hollowell as to the contents of letters written by appellant violated the best-evidence rule. We have defined the best-evidence rule as requiring the production of the original writing to prove the contents of that writing, unless a sufficient reason for not producing it is shown. *Commonwealth v. Byers,* 320 Pa.Super. 223, 467 A.2d 9 (1983), citing McCormick on Evidence 559 *et seq.* (2d ed. 1972). If, as a practical matter, the document cannot be produced because it is lost or destroyed, production of the original is excused and other evidence of the contents becomes admissible. McCormick, *supra,* at § 237. It is within the discretion of the trial court, based on proof of destruction, to determine whether production of the original document is feasible. *Id.; cf. Commonwealth v. Reicherter,* 317 Pa.Super. 256, 463 A.2d 1183 (1983).

■ In the present case, Ms. Hollowell testified that appellant confessed to the murder in letters written to her, but she had thrown the letters away and as a result could

3. Our Supreme Court has declared that a party may call and cross-examine a witness "when it is believed that the interest of truth and justice so require." *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986) (quoting *Commonwealth v. Waller,* 498 Pa. 33, 39, 444 A.2d 653, 656–57 (1982)).

not produce them in court. We acknowledge that because she was testifying about the contents of several writings, the best-evidence rule applies. We find, however, that the testimony presented established sufficient excuse for the failure to produce the original. Therefore, the trial court did not abuse its discretion on permitting secondary evidence as to the contents of the letters.

Finally, appellant urges that the trial court erred in not transferring the case to juvenile court. The Juvenile Act, applicable to this claim, provides as follows:

> (a) General rule— ... If it appears to the court in a criminal procedure charging murder, that the defendant is a child, the case *may* [ ] be transferred [to juvenile court] and the provisions of [the Juvenile Act] applied. (Emphasis supplied.)

42 Pa.C.S.A. § 6322(a).

> Regarding transfer to juvenile court, we have declared: From the language of the act, it is clear that transfer from the criminal court in murder cases is not a matter of right and the determination of whether the interests of the state and society require prosecution of murder on an indictment is left to the sound discretion of the common pleas court. *Commonwealth v. Pyle,* [462 Pa. 613, 342 A.2d 101 (1975) ].
>
>> If appellant is to prevail he must show a gross abuse of the broad discretion of the hearing judge who refused the transfer application. Such abuse may not merely be an error of judgment, but must be a misapplication of the law or an exercise of manifestly unreasonable judgment based upon partiality, prejudice or ill will.
>
> *Commonwealth v. Brown,* 332 Pa.Super. 35, 40, 480 A.2d 1171, 1174 (1984) [citations omitted].

*Commonwealth v. Zoller,* 345 Pa.Super. 350, 355, 498 A.2d 436, 439 (1985).

Appellant, as a juvenile, has the burden of proving that he belongs in a juvenile setting by showing his need and amenability to the program of supervision, care and rehabilitation which he would receive as a juvenile. *Pyle,*

*supra,* 462 Pa. at 622–23, 342 A.2d at 106. In the present case, as in *Pyle,* appellant based his transfer request on the need for psychiatric treatment. Determination of whether an juvenile is amenable to the juvenile system is to be made after careful scrutiny of the individual's personal make-up, previous history, and the nature and circumstances of the alleged homicide. *Id.,* 462 Pa. at 622 n. 13, 342 A.2d at 106 n. 13; *see also Commonwealth v. Brown,* 332 Pa.Super. 35, 480 A.2d 1171 (1984).

■ In this regard, appellant presented the testimony of a psychiatrist who indicated that appellant had emotional damage from which appellant could recover with proper treatment. Pretrial transcript at 83–85. In considering psychiatric testimony, however, if rehabilitation could not be assured during the child's minority while subject to the juvenile court jurisdiction, the child has failed to establish that he was amenable to juvenile rehabilitation. *Commonwealth v. Sourbeer,* 492 Pa. 17, 422 A.2d 116 (1980).

Instantly, the trial court determined:

... Defendant (age 17, born September 6, 1986) presented evidence he was anxious, depressed, suffered from an adjustment disorder and was amenable to treatment. However, the trial court found the crime to be premeditated and in all of its contacts with Defendant, noted a lack of contrition and penitence. Defendant's expert, Dr. Cary, stated that if the killing was premeditated, Defendant would more likely be a danger to society in the future. Dr. Cary could not assure the Court the proposed treatments would rehabilitate Defendant by the end of the treatment schedule or his 21st birthday anniversary, the benchmark for this standard. Even more important, Defendant did not prove to the satisfaction of the trial Court the existence of a juvenile facility which would accept him.

Opinion at 10.

We find no abuse of discretion by the trial court in denying appellant's transfer to juvenile court.

The judgment of the trial court is affirmed.