595 A.2d 158

**COMMONWEALTH of Pennsylvania**

v.

**Dwayne M. MORNINGWAKE, Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 1991.

Filed July 25, 1991.

Petition for Allowance of Appeal Denied Nov. 25, 1991.

132

Robert D. Glessner, York, for appellant.

H. Stanley Rebert, Asst. Dist. Atty., York, for Com., appellee.

Before CIRILLO, TAMILIA and HESTER, JJ.

TAMILIA, Judge.

Dwayne M. Morningwake takes this appeal from judgment of sentence entered September 4, 1990, after a jury found him guilty of first degree murder,[1] robbery,[2] burglary[3] and conspiracy[4] to commit these three offenses. On June 18, 1988, the appellant, then fifteen years old, along with co-defendants[5] Miguel E. Yoder and Michael A. Lehman, allegedly stabbed to death Kwame Beatty, the appellant's counselor at the York Children's Home where he resided. During the penalty phase of the trial, the jury recommended a sentence of life imprisonment for the first degree murder conviction. Appellant's post-trial motions were denied and life imprisonment along with two consecutive terms of eight (8) to sixteen (16) years and one (1) to two (2) years for the robbery and burglary convictions, respectively, were imposed by the court. This appeal followed.

Morningwake's first argument on appeal[6] is the court erred by failing to suppress statements made by him to the police which, appellant argues, were made without a "voluntary, knowing and intelligent waiver of his rights under all of the circumstances." (Appellant's brief at p. 15.) Appellant argues the adult with him when he made his statement to the police, Group Home Director, William Engstrand, was the victim's supervisor at the Children's Home and, therefore, his loyalties laid with the victim. Appellant also contends State Trooper David LaRue, one of the officers who took his statement confessing his involvement with the murder of Beatty, improperly suggested to appellant he could better his legal position by cooperating.

1. 18 Pa.C.S. §§ 2501 and 2502(a).
2. *Id.,* § 3701.
3. *Id.,* § 3502.
4. *Id.,* § 903.
5. The Commonwealth's motion to sever the co-defendants' trial was granted by Order dated January 9, 1989. Therefore, co-defendants Yoder and Lehman are not parties in this action.
6. We note for the record the Commonwealth did not file a brief in this appeal.

A determination of whether a juvenile knowingly waived his *Miranda* rights and made a voluntary confession is to be based on a consideration of the totality of the circumstances, including a consideration of the juvenile's age, experience, comprehension and the presence or absence of an interested adult. *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984). We find there was sufficient evidence of record to support the trial court's denial of appellant's motion to suppress his statements made to the police.

The appellant was fifteen years and eleven months old when he was brought to the police station on June 18, 1988, initially to be interrogated in his capacity as a runaway, but subsequently on the investigation surrounding the death of Beatty. Despite his youth, the appellant had had prior encounters with the police, as indicated in the record and confirmed by his mother. At approximately 9:30 p.m., Officer LaRue, together with Officer Garber, began an interview with appellant concerning his possible involvement with the Beatty killing. Officers LaRue and Garber testified appellant was advised of his *Miranda* rights and was given the opportunity to consult with William Engstrand, appellant's counselor and the supervisor of the Children's Home. Mr. Engstrand was also informed of appellant's rights. Appellant indicated to Officer LaRue he understood his rights, was willing to make a statement and had no questions. He proceeded to tell the officer it was the co-defendants who murdered Beatty. Approximately five hours later, after co-defendant Yoder implicated appellant, Officer LaRue woke appellant, inquired as to his alertness and again gave appellant his *Miranda* warnings and allowed him to speak privately with his mother on the telephone.[7] Appellant's mother was aware of the nature of the investigation and was advised of her son's rights. Appellant then once more spoke with Mr. Engstrand, before deciding to speak with the officers and offer a statement

7. Appellant was detained at the York County Police Department and appellant's mother resided in Harrisburg, Pennsylvania.

describing his involvement with the murder. Before putting the confession on tape, appellant was advised a third time of his constitutional rights. The district attorney, who was present when appellant confessed, testified appellant was alert, was in no way under the influence of any drug or medication, nor was he deprived of his ability to hear, understand and respond. Appellant's mother testified her son had made no indication statements given by him were coerced or forced, and she advised him to cooperate with the police.

Based on the totality of the circumstances surrounding appellant's questioning and his experience and awareness of the proceedings, we find appellant's statements and confession were given knowingly, intelligently and voluntarily.

Next, appellant argues the court abused its discretion by refusing to certify his case to Juvenile Court. Appellant contends he is not a dangerous juvenile as defined by the Juvenile Act, section 6302, his prior crimes were against property only and he never had the benefit of sustained rehabilitation, supervision or care.

The decision whether to grant an application for transfer to Juvenile Court of a juvenile charged with murder is within the sound discretion of the hearing judge, whose decision will not be disturbed absent a gross abuse of his broad discretion. *Commonwealth v. Brown,* 332 Pa.Super. 35, 480 A.2d 1171 (1984).[8] A juvenile seeking transfer of a murder case to Juvenile Court has the burden of proving he belongs in a juvenile setting by showing his need for and amenability to a program with supervision, care and rehabilitation such as that which he would receive as a juvenile. *Commonwealth v. Cessna,* 371 Pa.Super. 89, 537 A.2d 834 (1988). The determination of whether a juvenile is

---

8. Jurisdiction involving murder originally lies in the Criminal Court. *See* 42 Pa.C.S. § 6302(2)(i) **Delinquent Act.** Transfer from the Criminal Court to Juvenile Court is provided for in section 6322(a) and is governed by the criterion contained in section 6355(a)(4)(iii)(A). Thus the same criteria which are considered for transfer to Criminal Court under section 6355 are applicable in transfer from Criminal Court pursuant to section 6322 of the Juvenile Act.

amenable to the juvenile system is to be made only after a careful scrutiny of the individual's personal make-up, previous history and the nature and circumstances of the alleged homicide. *Id.*[9] We have reviewed the transcript of the November 10, 1988, hearing on appellant's petition to transfer this matter to Juvenile Court, as well as the trial court's November 30, 1988, decision denying appellant's petition and find there to have been no abuse of discretion by the trial court.

At the hearing, appellant responded appropriately and without hesitation to questions about his prior crimes and his purposeful shunning of all attempts by his parents and numerous homes and agencies to rehabilitate his behavior. Appellant's testimony with regard to his extensive journey through this state's youth residential facilities was matter of fact and offered without any justification other than blaming his cohorts and peers for leading him astray. His

**9.** The relevant considerations by the court as contained in 42 Pa.C.S. § 6355(a)(4)(iii)(A) are as follows:

**§ 6355. Transfer to criminal proceedings**

. . . .

(A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, even though there may not have been a prior adjudication of delinquency. In determining this the court shall consider the following factors:

Age.

Mental capacity.

Maturity.

The degree of criminal sophistication exhibited by the child.

Previous records, if any.

The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

Probation or institutional reports, if any.

The nature and circumstances of the acts for which the transfer is sought.

Any other relevant factors.

(B) That the child is not committable to an institution for the mentally retarded or mentally ill.

(C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

testimony reflected he was very much aware of the inappropriateness of his continued criminal behavior and drug and alcohol abuse, yet persisted in running away from all help offered him to change his self-destructive lifestyle. We find there was no evidence presented to convince the court appellant was amenable to programs of rehabilitation, supervision and care provided by the juvenile system. Also, it is unlikely that he could be effectively rehabilitated within the period of time within which Juvenile Court has jurisdiction. Therefore, the court's refusal to transfer the homicide case to Juvenile Court was proper.

■ Appellant's third argument on appeal is the court erred by denying his request for a venue change which was based on overt negative pretrial publicity. A hearing on the motion was held April 10, 1989, after which the court concluded the case could be tried in York County without undue prejudice to the appellant. Unfortunately for our society, the crime of murder is not so unusual so as to provoke the passion a murder such as this might have done 80 years ago. The court found the newspaper articles presented by the appellant in support of his motion were primarily informative rather than purposefully inflammatory, and the mere existence of pretrial publicity will not warrant a presumption of prejudice. *Commonwealth v. Keeler*, 302 Pa.Super. 324, 448 A.2d 1064 (1982). Also, during individual voir dire, the court allowed defense counsel ample opportunity to discuss and explore with each prospective juror any possible negative prejudice the juror may have experienced regarding the appellant and his involvement with the crime. Once impanelled, the court instructed the jurors not to discuss the case with nonjurors or listen to media coverage during the trial. Having found no abuse of discretion by the trial court in denying appellant's motion for change of venue, we find appellant's third argument to be without merit.

■ Next, appellant argues he was denied a fair trial when the court allowed the Commonwealth to challenge for cause those prospective jurors who indicated they could not

impose the death penalty. As stated in the trial court Opinion, this issue has been decided by our Supreme Court which followed the lead of the United States Supreme Court rejecting appellant's argument. *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987). Permitting the Commonwealth to challenge for cause prospective jurors based on the assertion the jurors could not impose the death penalty in a legally proper case did not deprive the appellant of his constitutional right to a fair and impartial jury.

The appellant alleges the trial court erred by refusing to sustain his demurrer to the burglary charge in that there was no evidence to show he had entered a separately occupied part of his residence. We disagree.

The murder took place in the victim's bedroom at the Children's Home of York where both appellant and the victim resided. To be found guilty of the crime of burglary the accused must have entered "a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. § 3502(a). The question becomes whether the appellant had the authority or permission to enter the separate part of the Children's Home where the victim had his bedroom/office. The testimony reflects the appellant, who was at the time a runaway from the Home, gained access to the Home by climbing through an open second floor window. Appellant and his two co-conspirators then went downstairs to the victim's room, opened the door and robbed and murdered Beatty. We find there was sufficient evidence of record for the jury to conclude the victim's bedroom/office was not a common area open to the residents of the Home at all hours of the night. It served as the victim's private sleeping quarters by night and as an office where records were kept and medications and petty cash funds were stored by day, and appellant was not privileged to enter at any time without

permission. Accordingly, the court did not err by refusing to grant appellant's demurrer to the burglary charge.

Next, appellant argues the court erred by not forcing co-defendant, Miguel Yoder, who had not yet come to trial, to testify. Co-defendant Yoder appeared before the court in response to a defense subpoena and asserted his constitutional right under the fifth amendment of the United States Constitution not to testify. We know of no legal basis on which any court could force a defendant to testify against his own interest. For this reason, we find appellant's argument to be without merit.

Appellant's final two arguments concern the court's jury charge regarding the defense of duress. Appellant contends the court omitted the last sentence of the Standard Jury Instruction on duress:

. . . .

(4) The Commonwealth has the burden of disproving the defense of duress. Thus you cannot find the defendant guilty of the crime of (_____) unless you are satisfied beyond a reasonable doubt that the defendant did not act under duress. . . .

Pa. SSJI (Crim) 8.309 Duress. This allegation is unsupported by the record. The following instruction given by the trial court adequately covers this portion of the suggested standard charge.

With regard to this, although duress is known as a defense, it is always the Commonwealth's burden to establish all elements beyond a reasonable doubt, and so it is always the Commonwealth's burden to disprove the existence of duress to the satisfaction of a Jury beyond a reasonable doubt.

(T.T., 4/12, 13, 14/89, p. 408.) Appellant maintains the final sentence of the standard jury charge must have been contained verbatim in the judge's instruction. The judge is not bound by the standard jury instructions, which are merely a guide. We find the court's charge meets the test required

which places the burden on the Commonwealth to disprove duress beyond a reasonable doubt, and therein, unmistakably, is implied the requirement the jury could not enter a guilty verdict on the charge unless duress was disproved beyond a reasonable doubt. Appellant's argument is, therefore, devoid of merit.

▮ Appellant also argues the court erred by instructing the jury duress was a defense to all criminal activity except first degree murder. On the date the jury was charged, the court's instruction was correct as it is now.[10]

▮ The defense of duress is generally available to a defendant charged with any crime except one which involves taking the life of an innocent person. 22 C.J.S. Criminal Law § 52, n. 99. The three elements which must be shown to establish a duress defense are: (1) an immediate or imminent threat of death or serious bodily injury; (2) a well grounded or reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened. harm except by committing the criminal act. The law cannot permit a party who places himself in harms way by engaging in felonious criminal activity to exculpate himself by claiming the taking of an innocent life was necessary because of duress, even if his own life was thereby threatened.

Duress must not be confused with justification. Justification entails taking the life of a person who is threatening the life of the defendant or another person to prevent oneself or the other person from being killed. Duress entails the killing of an innocent person under threat of being killed. The law of nature permits a person to kill one who is to take his life and acting in self-defense; it does not

10. Although seven months later, in the appeal of co-conspirator Yoder, this Court found duress to be a defense to all intentional criminal charges, including first degree murder, *Commonwealth v. Yoder*, 396 Pa.Super. 659, 570 A.2d 1091 (1989) (unpublished memorandum); unpublished memoranda of this Court have no precedential authority for any purpose. If the cases had been tried together, the legal interpretation in one would be binding on the other. Since this case was severed, the ruling in *Yoder* is not binding here.

permit a person to take the life of an innocent person to prevent his own possible demise by the hand of the person making the threat. For lesser crimes than murder, duress is allowable because, on balance, saving one's own life, by committing a crime not entailing the death of another, has a higher value in society than avoiding the commission of that crime. One, however, may not be permitted to kill another innocent person to save one's own life, since society places an equal value on both lives.

In finding harmless its failure to instruct duress was a viable defense to first degree murder, the court in this case reasoned it did properly instruct on the defense of duress with regard to the robbery and burglary charges, and, by finding appellant guilty as charged, the jury apparently determined he was under no duress. "[T]herefore, it is obvious that they would have disregarded duress as a defense to the more serious offense involved" (first degree murder). (Slip Op., Erb, P.J., 6/26/90, p. 7.) We agree with this reasoning and find there was no error with regard to the jury instruction on duress.

For all of the foregoing reasons, we must affirm appellant's judgment of sentence.

Judgment of sentence affirmed.