645 A.2d 872

**COMMONWEALTH of Pennsylvania**

v.

**Michael REED A/K/A Michael R. Reed, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1993.

Decided Aug. 2, 1994.

Reargument Denied Aug. 23, 1994.

306

Candace Cain, Asst. Public Defender, Pittsburgh, for appellant.

Maria V. Copetas, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and McEWEN, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

ROWLEY, President Judge:

Appellant Michael Reed, while a juvenile, was charged with criminal homicide. He filed a petition pursuant to 42 Pa.C.S. § 6322(a) to have the homicide charge transferred to the juvenile division of the Court of Common Pleas. The trial court denied the petition after a hearing, and appellant was tried as an adult and convicted of murder in the first degree. Although he filed post-trial motions, they did not include a claim that the trial court erred in refusing to transfer the case to the juvenile division. We are now asked to decide, inter alia, whether appellant's failure to include the transfer claim in post-trial motions constitutes a waiver of the issue.

After careful review, we conclude that the issue has not been waived. Accordingly, we will address the issue along with the others raised by appellant. Concluding that none of appellant's claims entitles him to relief, we affirm the judgment of sentence.

The events that have culminated in this appeal began on April 18, 1990, when appellant and a co-defendant, Jackie Lee Williams, both seventeen years old, hailed a cab and were driven to their destination in the city of Pittsburgh. Upon arriving, they informed the cab driver, Thomas Law, that they did not have money with which to pay the fare. Predictably, a dispute ensued, with the result that appellant fatally shot Law and then searched Law's front pocket.

On April 19, 1990, a criminal complaint was filed against appellant in the criminal division of the Court of Common Pleas of Allegheny County, charging him with criminal homi-

cide, 18 Pa.C.S. § 2501(a). At the same time, a juvenile delinquency petition was filed against appellant in the Court's juvenile division, charging him with the delinquent acts of robbery, 18 Pa.C.S. § 3701, aggravated assault, 18 Pa.C.S. § 2702, and criminal conspiracy, 18 Pa.C.S. § 903. The Commonwealth filed a motion to transfer the juvenile petition to the criminal division and to consolidate the juvenile charges with the charge of homicide. The trial court granted the motion in an order entered July 9, 1990. A subsequent motion filed on appellant's behalf to transfer the case to the juvenile division was denied after hearings, as was a motion to suppress a statement taken from appellant.

Appellant went to trial before a jury on charges of criminal homicide, robbery, and criminal conspiracy. At the close of the Commonwealth's case, appellant's demurrer to the charge of criminal conspiracy was sustained. The jury found appellant guilty of murder in the first degree and robbery. In a motion for a new trial and arrest of judgment, appellant challenged the trial court's failure to sever his trial from that of his co-defendant, the admission into evidence of redacted statements of appellant and his co-defendant, the court's refusal to grant defense counsel's request for a mistrial after the co-defendant's redacted statement was heard, and the court's refusal of defense counsel's request that the jury be charged on the offense of voluntary manslaughter. Appellant's post-trial motion was denied,[1] and a sentence of life imprisonment, mandatory for murder in the first degree, was subsequently imposed.

In this timely appeal from the judgment of sentence, appellant raises three issues:

1) Did the trial court err in not transferring the case to the juvenile division?

1. In its opinion filed May 19, 1992, the trial court explained that because appellant briefed only one of his post-trial issues, namely, whether the trial court erred by admitting into evidence the redacted statement of the co-defendant, the court would address only that issue, considering the others to have been waived.

2) Was trial counsel ineffective for failing to object to the hearsay testimony provided by the Allegheny County coroner as to the legal cause of the victim's death, when the medical examiner who performed the autopsy did not testify at trial?

3) Was trial counsel ineffective for failing to object, before the jury retired to deliberate, to the trial court's refusal to charge the jury on voluntary manslaughter?

■ At the outset, we are required to determine whether appellant's first issue has been preserved for our review. Appellant's argument on the matter is as follows:

This issue was raised before trial in a Petition to Transfer. However, the issue was not raised in post-verdict motions, which would normally act as a waiver of the issue for appellate review. See, Pa.R.Crim.P., Rule 1123, 42 Pa.C.S. Nonetheless, this claim is properly before the court because a Motion to Transfer Criminal Proceedings to Juvenile Court presents a jurisdictional issue which cannot be waived for appellate purposes. *Commonwealth v. Leatherbury,* 390 Pa.Super. 558, 568 A.2d 1313 (1990), *[appeal] denied,* [525 Pa. 643], 581 A.2d 570 (1990); *Commonwealth v. Pyle,* [462 Pa. 613, 342 A.2d 101 (1975)]; *Commonwealth v. Zoller,* [345 Pa.Super. 350, 498 A.2d 436 (1985)].

Brief for Appellant at 18 n. 3.[2] According to the Commonwealth, the Supreme Court implied in *Pyle* that the issue was in fact non-jurisdictional, and statements of this Court to the contrary in *Leatherbury* and *Zoller* are inconsistent with *Pyle* and with statutory law as well. The Commonwealth also points out that the cases relied upon by appellant are distinguishable from his own by the fact that the defendants in the cited cases pled guilty, whereas "[i]n appellant's case, a full

---

**2.** Present counsel for appellant, somewhat tardily recognizing that this Court may not agree with the argument set forth above for the preservation of appellant's first issue, has filed a reply brief in which he offers an alternative basis for preservation, that being the ineffectiveness of trial counsel and present counsel in failing to include the issue in post-trial motions and in appellant's original appellate brief. Given our resolution of appellant's first issue on the basis of his initial argument for its preservation, we need not address these allegations of ineffective assistance of counsel.

menu of pre-, mid- and post-trial procedures was available to challenge the [trial] court's exercise of discretion" (Brief for Appellee at 7). Waiver is the appropriate consequence of appellant's failure to raise the transfer issue in post-trial motions, the Commonwealth argues, because appellant's omission has resulted in the absence from the record of "either the written reflections of the hearing judge who observed the witnesses and assessed their demeanor and credibility or contemporaneous findings of fact and conclusions of law" (Brief for Appellee at 7), and this Court is therefore unable to conduct a meaningful appellate review of appellant's claim.

To resolve this threshold matter,[3] we turn first to the Supreme Court's opinion in *Commonwealth v. Pyle, supra.* In that case, the seventeen-year-old appellant was arrested for the shooting death of his father and charged with criminal homicide. He petitioned the trial court to transfer the matter to the juvenile division, and a rule was issued upon the district attorney to show cause why the case should not be transferred. At the same time, the Commonwealth filed a juvenile charge of theft against appellant and petitioned the court to transfer that charge to the criminal division of the court. After a hearing, the trial court discharged the rule and granted the Commonwealth's petition for transfer of the theft charge. Appellant then pled guilty to both criminal charges and was sentenced to a term of imprisonment of six to sixteen years.

Appellant argued on appeal that the trial court had "erred in determining that there were reasonable grounds to believe he was not amenable to treatment, supervision or rehabilitation within the juvenile court system." *Id.* at 617, 342 A.2d at 103. Concluding that the burden is upon the juvenile charged with murder to show that he does not belong in the criminal

---

3. Section 6355(f), 42 Pa.C.S. § 6355(f), states that "[t]he decision of the court to transfer or not to transfer the case shall be interlocutory." As noted by this Court en banc in *Commonwealth v. Johnson*, 435 Pa.Super. 132, 645 A.2d 234 (1994), however, "§ 6355 of the Juvenile Act applies expressly to transfers from the juvenile division to the criminal division *only.*" *Id.* at 136, 645 A.2d at 237. Accordingly, it does not resolve the question before us.

division, and that appellant had failed to meet that burden, the Supreme Court affirmed the judgment of sentence.

For the purposes of this appeal, our interest is not in the Court's ruling on the merits of appellant's claim, but in the reasoning by which the Court found the issue to have been preserved for appellate review:

Absent unusual circumstances, a guilty plea constitutes a waiver of any non-jurisdictional defects or defenses. However, since one of the prime purposes of the Juvenile Act is to spare from adult punishment certain youths whose behavior would necessarily render them *guilty* of adult crimes (including in some instances, the crime of murder) and since the decision to, or not to transfer is interlocutory—11 P.S. 50–325(f)—and thus only appealable after sentencing[,] we find the instant challenge to be properly preserved.

*Id.* at 617 n. 4, 342 A.2d at 101 n. 4 (emphasis in original; citations omitted).

This Court cited the statement quoted above in its opinions in *Zoller, supra,* and *Leatherbury, supra.* The two juvenile defendants in *Zoller* were charged with first and second degree murder and agreed to plead guilty to third degree murder after the trial court denied their petition for transfer to the juvenile division. As to the Commonwealth's request that the defendants, as part of the plea agreement, withdraw their motion for transfer, this Court noted that

[i]t was, however, correctly determined during the colloquy that the Motion for Transfer was a jurisdictional issue and, therefore, not waivable. *See Commonwealth v. Pyle, [supra].*

*Id.* 345 Pa.Super. at 353, 498 A.2d at 438. On appeal, the defendants asserted that the trial court erred in denying the requested transfer to the juvenile division. This Court affirmed the trial court's order.

The events in *Leatherbury* followed a similar course. The juvenile defendant was charged with third degree murder; the trial court denied his request to transfer the case to the juvenile division; and the defendant pled guilty, was sen-

tenced, and appealed, challenging the trial court's refusal to transfer the case. This Court found the claim to be properly before it because "a motion to transfer criminal proceedings to juvenile court presents jurisdictional issues which are not waived for appellate purposes. *Commonwealth v. Pyle,* [*supra*]; *Commonwealth v. Zoller,* [*supra*]." *Id.* 390 Pa.Super. at 560, 568 A.2d at 1315. As in *Zoller,* this Court found no abuse of discretion in the trial court's decision to deny transfer.

In neither *Zoller* nor *Leatherbury* does this Court offer any analysis to support its interpretation of the relevant passage in *Pyle.* If we were required to decide the question without further guidance from the Supreme Court, we would be inclined to adopt the position urged upon us by the Commonwealth. That is, we would not read the passage to mean, as was stated in *Zoller* and *Leatherbury,* that the transfer issue is *jurisdictional.* Rather, we would read the passage to mean that an allegedly erroneous refusal to transfer a case from the criminal to the juvenile division is a *non-jurisdictional* "defect or defense" which would ordinarily have been waived by appellant's guilty plea, but which is instead saved from waiver by the "unusual circumstances" of the case (i.e., the purpose of the Juvenile Act and the interlocutory nature of an order refusing to transfer the charges to the juvenile division, both of which circumstances are applicable in the case before us).

In our view, there are several sources of support for such an interpretation, including:

(1) Article V, section 5 of our state Constitution, which establishes a single court of common pleas for each judicial district;

(2) section 952 of the Judicial Code, 42 Pa.C.S. § 952, which states that the divisions of the courts of common pleas are administrative units and that each division, in those courts having more than one division, "is vested with the full jurisdiction of the whole court";

(3) subsection (a) of the Official Comment—1976 to § 6301 of the Juvenile Act, 42 Pa.C.S. § 6301 (Short title and purposes of chapter), which explains that the chapter was entitled

"Juvenile Act" rather than the more usual "Juvenile Court Act" "in view of the recent consolidation of original jurisdiction solely in the several courts of common pleas by Section 5 of Article V of the Pennsylvania Constitution, as amended 1968"; and

(4) case law which emphasizes the unified nature of the courts of common pleas. *See, e.g., Commonwealth v. Wadzinski,* 485 Pa. 247, 401 A.2d 1129 (1978), *on remand,* 266 Pa.Super. 56, 403 A.2d 91 (1979), *rev'd on other grounds,* 492 Pa. 35, 422 A.2d 124 (1980) (if matter is justiciable, court of common pleas has jurisdiction to hear it, and remedy for bringing case in wrong division is not dismissal, but transfer to correct division).

Nevertheless, we are not without further guidance from the Supreme Court in this matter. In *Commonwealth v. Moyer,* 497 Pa. 643, 444 A.2d 101 (1982), the appellant, who was seventeen years old when he was charged with murder, pled guilty after the trial court denied his motion to transfer the case to the juvenile division. On appeal, he argued that the court had erred in refusing to transfer the case. The Supreme Court addressed the issue as follows:

> Normally, a plea of guilty constitutes a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence and the validity of the plea. Appellant was expressly informed at his guilty plea colloquy that he would have the right to appeal the results of his certification hearing. More importantly, **this issue of certification is jurisdictional and therefore not waivable.** *See Commonwealth v. Pyle,* [*supra*] at footnote four, wherein this Court stated that the entry of a guilty plea in a juvenile setting did not amount to a waiver of the right to challenge the [trial] court's refusal to certify a case for disposition in Juvenile Court.

*Id.* at 646, 444 A.2d at 102 (additional citation deleted; emphasis added).

In *Commonwealth v. Johnson, supra,* this Court en banc opines "that our high court intended for orders which deny a

314

minor's petition for transfer from the criminal division of the court to the juvenile division to be 'jurisdictional' *only* in the sense that the issue cannot be waived by the juvenile." *Id.* 435 Pa.Super. at 132–133, 645 A.2d at 241. We agree. As we are faced with just such a situation in the present appeal, we conclude that appellant's challenge to the trial court's refusal to transfer his case from the criminal to the juvenile division presents a "jurisdictional," or more precisely a "non-waivable," issue. Accordingly, we will proceed to address the merits of the issue.

▆▆▆ First, appellant contends that the trial court erred in denying his petition to have the proceedings against him transferred from the criminal to the juvenile division. "Where murder is charged, treatment as a 'youthful offender'... does not arise as a matter of right." *Commonwealth v. Pyle*, 462 Pa. at 618, 342 A.2d at 104. Instead, it must be sought under § 6322(a) of the Juvenile Act, which reads in pertinent part as follows:

> If it appears to the court in a criminal proceeding charging murder, that the defendant is a child, the case **may** ... be transferred [to the juvenile division] and the provisions of this chapter [i.e., the Juvenile Act] applied. In determining whether to transfer a case charging murder, the court shall apply the criteria in section 6355(a)(4)(iii)(A) (relating to transfer to criminal proceedings). However, **the child shall be required to show the court that the child is amenable to treatment, supervision or rehabilitation as a juvenile** by meeting the criteria listed in section 6355(a)(4)(iii)(A).

42 Pa.C.S. § 6322(a) (emphasis added). The criteria listed in § 6355(a)(4)(iii)(A) are the following: age; mental capacity; maturity; degree of criminal sophistication exhibited by the juvenile; previous records, if any; nature and extent of any prior delinquent history; whether the juvenile can be rehabilitated before the juvenile division's jurisdiction expires; probation or institutional reports, if any; nature and circumstances of the acts involved; and any other relevant factors.

The decision whether to grant an application for transfer to Juvenile Court of a juvenile charged with murder is within the sound discretion of the hearing judge, whose decision will not be disturbed absent a gross abuse of his broad discretion. A juvenile seeking transfer of a murder case to Juvenile Court has the burden of proving he belongs in a juvenile setting by showing his need for and amenability to a program with supervision, care and rehabilitation such as that which he would receive as a juvenile. The determination of whether a juvenile is amenable to the juvenile system is to be made only after a careful scrutiny of the individual's personal make-up, previous history and the nature and circumstances of the alleged homicide.

*Commonwealth v. Morningwake,* 407 Pa.Super. 129, 135–36, 595 A.2d 158, 161 (1991), *appeal denied,* 529 Pa. 618, 600 A.2d 535 (1991) (citations and footnotes omitted). An abuse of discretion that will warrant reversal of the trial court's decision "may not merely be an error of judgment, but must be a misapplication of the law or an exercise of manifestly unreasonable judgment based upon partiality, prejudice or ill will." *Commonwealth v. Romeri,* 314 Pa.Super. 279, 291, 460 A.2d 1139, 1145, *aff'd,* 504 Pa. 124, 470 A.2d 498 (1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984).

■ Appellant maintains that he not only offered evidence of all of the factors listed in § 6355(a)(4)(iii)(A), but also met his burden of showing that he needed and was amenable to supervision, treatment, and rehabilitation as a juvenile. Among the factors favoring transfer, appellant notes the absence of any prior juvenile adjudications, and only one "minor arrest" that was disposed of by a district magistrate; the absence of a history of violence; his relative immaturity and expression of remorse; and, perhaps most importantly, his history of psychological and emotional problems, lack of any prior treatment, and the opinion of Dr. Herbert Levit, a psychologist who had examined appellant, that after two or three years of appropriate treatment there was a reasonable chance that appellant, then eighteen, could be rehabilitated and become a productive member of society.

Appellant contends that his own case is distinguishable from others in which the denial of a transfer request was affirmed, such as *Commonwealth v. Zoller, supra,* where the defendant showed no remorse and there was no assurance that his antisocial and aggressive behavior could be treated successfully before his twenty-first birthday, and *Commonwealth v. Sourbeer,* 492 Pa. 17, 422 A.2d 116 (1980) (plurality), where the defendant's psychiatrist testified that a significant change in the defendant's personality disorder could be expected around the age of 35 or 40. According to appellant, his "need for care, guidance and control as a juvenile outweighs the state and society's need to apply legal restraint and discipline as an adult," *Commonwealth v. Romeri,* 504 Pa. 124, 138, 470 A.2d 498, 505 (1983) [quoting *Commonwealth v. Pyle,* 462 Pa. at 622, 342 A.2d at 104] (emphasis deleted), and the trial court therefore abused its discretion in refusing to transfer his case to the juvenile division.[4]

In response, the Commonwealth suggests that the prognosis for appellant's rehabilitation within the juvenile system is less favorable than appellant would have us believe. According to the Commonwealth, appellant was eighteen *and one half* years old at the time of the hearing, and therefore, with respect to Dr. Levit's statement that psychotherapy over a two- or three-year period was advisable, "the math does not add up" (Brief for Appellee at 10). As another unfavorable factor, the Commonwealth points to Dr. Levit's admission that in fact appellant had discontinued psychotherapy at some point in the past.

Because this issue was not presented to the trial court in appellant's post-verdict motions, we do not have the benefit of

4. Relying on *Commonwealth v. Lux,* 299 Pa.Super. 136, 445 A.2d 185 (1982), appellant suggests that the burden is on the Commonwealth to demonstrate that he is not amenable to treatment as a juvenile. This is incorrect. Where, as in *Lux,* a delinquency petition is filed against a juvenile and the Commonwealth seeks to have the juvenile certified for trial as an adult, the burden is on the Commonwealth to prove, *inter alia,* that the juvenile is not amenable to treatment, supervision, or rehabilitation within the juvenile system. *Commonwealth v. Moss,* 518 Pa. 337, 341, 543 A.2d 514, 516 (1988). As noted earlier, however, where, as here, a juvenile charged with murder seeks to have his case transferred from the criminal to the juvenile division, the burden is upon the juvenile to prove that he belongs in a juvenile setting.

an opinion setting forth the reasoning which led the trial court to deny appellant's transfer petition. However, after considering the arguments of the parties and reviewing the transcript of the hearing on appellant's transfer motion, we are confident that the absence of an opinion by the trial court does not preclude effective appellate review.

Our review leads us to the conclusion that the trial court's decision to deny appellant's transfer request was not a gross abuse of the court's broad discretion. In *Commonwealth v. Cessna*, 371 Pa.Super. 89, 537 A.2d 834 (1988), in which a juvenile charged with murder based his transfer request on the need for psychiatric treatment, this Court held that "[i]n considering psychiatric testimony ... if rehabilitation could not be assured during the child's minority while subject to the juvenile court jurisdiction, the child has failed to establish that he was amenable to juvenile rehabilitation. *Commonwealth v. Sourbeer*, [*supra*]." *Id.* 371 Pa.Super. at 100, 537 A.2d at 839.[5] We are faced with such a situation in this case. Appellant was born on June 30, 1972. At the time of the hearing, held on January 7, 10, and 17, 1991, he was in fact eighteen and one half years old. Therefore, there remained a possible two and one half years in which appellant could have been treated within the juvenile system. On direct examination, Dr. Levit gave the following opinion concerning appellant's condition and prospects:

In general, I felt that he was a depressed adolescent who was amenable to treatment, who has never had treatment even though it has been suggested or recommended many times.

. . . . .

I think he is salvageable. I think if he were to get competent psychotherapy over a two- or three-year period,

**5.** Although the testimony in *Cessna* was offered by a psychiatrist and the testimony in the present case is that of a psychologist, we do not consider this distinction to be significant. In both cases the trial court was presented with the testimony of a professional "who indicated that appellant had emotional damage from which appellant could recover with proper treatment." *Id.* 371 Pa.Super. at 100, 537 A.2d at 839.

his lifestyle could be reversed, he could become a productive citizen.

N.T., 1/7/91, at 12–13. Cross-examination revealed the following:

Q: Are you telling us that this man can be rehabilitated from a shooting that he really denies responsibility for in two and a half years?

A: No, I'm not saying that. I cannot guarantee the results of psychotherapy for anybody under any circumstances.

I am saying that I think there's a reasonable chance that this young man can be rehabilitated through the juvenile system.

N.T., 1/7/91, at 26. Also relevant is the following testimony:

Q: Dr. Levit, would it be fair to say that running through most of these reports ... is that this man has an explosive temper?

A: That's correct.

Q: And would it be fair to say that in these reports are statements that he was offered psychotherapy ... but ... chose not to go anymore? Did you see that in the report?

A: Yes, I did, that's correct.

Q: Now, in light of that, what evidence do you have—that certainly contradicts the evaluations from Ward Home [a residence for abused and neglected children, where appellant stayed before committing the offense involved here] that he is amenable to psychological counseling now?

A: Number one, the circumstances have significantly changed....

N.T., 1/7/91, at 29–30. Dr. Levit was certain that "if you send him to an adult correctional facility he will be lost" (N.T., 1/7/91, at 30).

■ Even if we were to agree with Dr. Levit's assumption that appellant's chances of receiving effective psychotherapeutic treatment would have been far better in the juvenile

system than in the adult correctional system, we are not permitted to substitute a "best interests" analysis for the tests established by statutes and case law. As noted earlier, the burden was on appellant to show that he was amenable to the juvenile system. 42 Pa.C.S. § 6322(a); *Commonwealth v. Morningwake, supra.* While some of the factors enumerated in § 6355(a)(4)(iii)(A), such as appellant's apparent immaturity and the absence of any significant prior record, favored his transfer to the juvenile division, others did not. Of these, the most significant were appellant's earlier refusal of the opportunity to receive counseling; his prospects for rehabilitation during his minority, which were no better than "a reasonable chance"; and, of course, the heinous nature of his offense. Having been presented with evidence of all of these factors, the trial court could reasonably have concluded that appellant had failed to prove his amenability to treatment as a juvenile. Our review persuades us that this decision did not constitute a gross abuse, or indeed any abuse at all, of the trial court's broad discretion in this matter.

Accordingly, we turn to appellant's remaining issues, both of which allege the ineffectiveness of trial counsel.[6] This Court recently summarized the requirements for prevailing on such a claim:

Our standard of review for allegations of ineffective assistance of counsel is well-established and quite narrow. Ineffectiveness claims are subject to a three-part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evalua-

6. Court-appointed counsel represented appellant through sentencing. At the conclusion of sentencing, the trial court granted court-appointed counsel's oral motion to withdraw and appointed the Public Defender of Allegheny County to represent appellant. As appellant's claims of ineffectiveness have been raised for the first time on appeal, there has been no evidentiary hearing on the claims.

tion of whether "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." *Commonwealth v. Petras*, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987). The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. Counsel will not be deemed ineffective for failing to assert a baseless claim. Moreover, in making assertions of ineffectiveness, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective since the appellate courts will not consider such claims in a vacuum.

*Commonwealth v. Donahue*, 428 Pa.Super. 259, 282, 630 A.2d 1238, 1249–50 (1993) (additional citations omitted).

 Appellant contends, first, that trial counsel was ineffective for failing to object to the testimony of Dr. Joshua Perper, the Allegheny County coroner, concerning the cause of death of the victim, Thomas Law. Dr. Catherine Janosz, a former employee of the coroner's office, performed the autopsy on the victim, and Dr. Perper's testimony concerning the cause of death was based on his review of the report of Dr. Janosz, who did not testify. Appellant maintains that Dr. Janosz's report was hearsay and that the admission of Dr. Perper's testimony as to the contents of that report caused appellant to be denied his right of cross-examination.

In support of his claim, appellant cites the opinion of our Supreme Court in *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974). At appellant's trial for murder in that case, the Commonwealth "endeavored to satisfy its burden of proving legal causation beyond a reasonable doubt by reading into evidence, over repeated objection, substantial portions of the written report of the official, salaried medical examiner who performed an autopsy on the deceased." *Id.* at 311, 322 A.2d at 654. The medical examiner was not called to testify because he was attending a convention at the time of trial. Admission of his report was based on the business records exception to the hearsay rule.

Appellant argued on appeal, and the Supreme Court agreed, that the admission of the report violated his right under the Pennsylvania Constitution to confront and cross-examine the witnesses against him. The Court noted that causation is an element of the crime of murder, that it must therefore be proved by the Commonwealth beyond a reasonable doubt, that medical evidence is opinion evidence, and that "[f]requently, the cause of death is seriously in issue and the subject of conflicting opinion by qualified physicians." *Id.* at 312, 322 A.2d at 655. Because the medical examiner was not available for cross-examination, his opinion as to the cause of death "was ... insulated from effective challenge." *Id.* at 314, 322 A.2d at 656. The Court held that

> in a homicide prosecution, evidentiary use, as a business records exception to the hearsay rule, of an autopsy report in proving legal causation is impermissible unless the accused is afforded the opportunity to confront and cross-examine the medical examiner who performed the autopsy, absent a compelling necessity.

*Id.* at 315, 322 A.2d at 656–57 (footnote omitted). The Court rejected the Commonwealth's contention that admission of the report was harmless error, observing instead that denial of cross-examination was "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Id.* at 317, 322 A.2d at 657 [quoting *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968)].

In *Commonwealth v. Mitchell,* 391 Pa.Super. 100, 570 A.2d 532 (1990), *appeal denied,* 527 Pa. 599, 589 A.2d 689 (1990), a panel of this Court considered the claim of appellant, who had been convicted of first degree murder, that his trial counsel was ineffective for failing to object to the testimony of the medical examiner, Dr. Catherman, concerning the manner and cause of the victim's death. Dr. Catherman based his testimony on autopsy reports prepared by Dr. Carpenter, who was unavailable because he had moved out of the country. Judge Olszewski, the author of the lead opinion, concluded that the testimony was properly admitted and that trial counsel was therefore not ineffective for failing to object to it. He distin-

guished the case from *McCloud* by noting the unavailability of the doctor who had performed the autopsy, as well as the fact that "Dr. Catherman did not read any of Dr. Carpenter's opinions or conclusions[; h]e read only the facts contained in the report, and based his own opinion on those facts." *Id.* 391 Pa.Super. at 104, 570 A.2d at 534 (footnote omitted).

Judge Cavanaugh, joined in a concurring opinion by Judge Cercone, disagreed with Judge Olszewski's conclusion that the case could be distinguished from *McCloud.* Nevertheless, because they perceived a reasonable basis for trial counsel's failure to object (namely, that he may have wanted to avoid the admission of the graphic autopsy photographs as a foundation for Dr. Catherman's testimony), the concurring judges concluded that appellant had failed to demonstrate counsel's ineffectiveness. *Id.* at 105–08, 570 A.2d at 535–36.

We reach the same conclusion in the case before us. Even if we were to assume for the sake of argument that appellant's claim has arguable merit and that appellant was necessarily prejudiced by counsel's failure to object, a reasonable basis for counsel's decision is nevertheless apparent from the cross-examination portion of the trial transcript: simply, counsel *did not disagree* with Dr. Perper's testimony. Repeatedly trial counsel ended his questions to Dr. Perper with "is that correct?" and "isn't that correct?"; repeatedly Dr. Perper answered affirmatively. At one point trial counsel responded to Dr. Perper's answer by saying "that's exactly what I wanted to hear" (N.T., 6/3/91, at 35). At another point trial counsel's comment was "[t]hat's exactly right" (N.T., 6/3/91, at 37).

At no point is there any suggestion that trial counsel was attempting to challenge Dr. Perper's conclusion concerning the cause of death.[7] In fact, trial counsel mentioned during his closing argument to the jury that "[w]e know from Dr.

7. Appellant contends that Dr. Perper did not give his own conclusion as to the cause of death, but merely reiterated the conclusion of Dr. Janosz. This is incorrect, as is shown by the following exchange on direct examination:

Q: Dr. Perper, based upon **your** examination of these findings and the autopsy photographs, have **you** arrived at a conclusion with a

Perper's testimony that the shot had to have been fired from at least two feet away" (N.T., 6/6/91, at 340). Appellant even argues on appeal that Dr. Perper's testimony supports his claim, to be discussed *infra*, that he shot the victim because he feared that the victim was about to assault him; it is the Commonwealth which argues that "Dr. Perper's testimony ... lends no credence to appellant's theory" (Brief for Appellee at 17 n. 11). Because trial counsel's strategy did not challenge, and in fact utilized, Dr. Perper's testimony, we conclude that trial counsel had a reasonable basis for not objecting to the admission of that testimony. Accordingly, this claim of ineffectiveness fails.

■ Appellant's remaining claim is that trial counsel was ineffective for failing to object to the trial court's omission from its charge to the jury of an instruction on "unreasonable belief voluntary manslaughter." [8] The relevant statutory provision reads as follows:

**(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b). To support his claim that he feared an assault upon his person, appellant points to the following portion of his confession, which was read into evidence by Detective Marshall Hynes:

When we [appellant and his co-defendant] got there [i.e., to the residence of appellant's friend, Vickie], we went up to

reasonable degree of medical certainty as to the cause of Thomas Law's death?
A: Yes.
Q: What is that, sir?
A: And the conclusion is that he died as a result of a gunshot wound of the left temple with severe brain injuries.
N.T., 6/3/91, at 33 (emphasis added).

**8.** In the interest of judicial economy, we will overlook appellant's failure to assert that trial counsel was also ineffective for failing to brief this issue in the trial court. See footnote 1, *supra*.

Vickie's house to get the money to pay him. And while she was in there looking for it, the taxi driver was getting impatient, started telling me he was going to call the cops, and I was asking him to wait for her to go get the money. He told me he wasn't waiting no more. So then he spun around and told me to stop following him. And when he turned back, I shot him.

N.T., 6/5/91, at 255. Officer Hynes then acknowledged that he had omitted a word while reading the statement and that appellant had in fact said, "When he turned back around, I shot him" (N.T., 6/5/91, at 256). As further evidence to support this scenario, appellant points to Dr. Perper's testimony that the gunshot wound was in the victim's left temple, not in the back of his head. Appellant also cites the testimony of one Richard Goshay that appellant had said to him that it appeared as though the victim was going to turn around and hit him.

In *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983), the Supreme Court held that an "unreasonable belief" manslaughter charge "shall be given only when requested, where the offense has been made an issue in the case, and **the trial evidence reasonably would support such a verdict.**" *Id.* at 443, 466 A.2d at 1333 (footnote deleted; emphasis added). Such is not the case here. Appellant does not specify the principle of justification upon which his argument is based, but it can only be 18 Pa.C.S. § 505, Use of Force in Self–Protection. However, "[t]he use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat...." 18 Pa.C.S. § 505(b)(2). Of these terms, only "serious bodily injury" is relevant to appellant's situation, yet appellant points to no more specific threat than that he thought the victim was going to hit him. Moreover, the Commonwealth points to the following two statements in appellant's confession, not cited by appellant, which seriously undermine appellant's claim that he feared an assault by the cab driver:

[Appellant]: Then he turned. He told me to stop following him. I told him I was only asking him to wait till she got the money. **Then he turned back around and started walking again. I shot him.**

N.T., 6/5/91, at 264 (emphasis added).

Detective Logan: Okay.... He's walking away towards his cab and you say—what happened here?

[Appellant]: I shot him.

Detective Logan: Okay. Why did you shoot him at this time.

. . . . .

[Appellant]: **Cause he said he was going to get the cops.**

N.T., 6/5/91, at 265 (emphasis added). In light of these statements, we conclude that this is not a case in which the evidence would reasonably support a verdict of "unreasonable belief" voluntary manslaughter. Accordingly, appellant's claim that trial counsel should have renewed his objection to the refusal of such an instruction lacks arguable merit, and for that reason we hold that trial counsel was not ineffective in this regard.

Judgment of sentence affirmed.