J-A24037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL ZELIKOVICH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WOOD & FLODGE, AND | : | No. 2975 EDA 2023 |
| CHRISTOPHER H. STEWARD | : | |

Appeal from the Judgment Entered November 13, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200601802

BEFORE:   LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                          **FILED APRIL 11, 2025**

In this legal malpractice action, Daniel Zelikovich ("Husband")[1] appeals from the judgment entered upon a jury verdict in favor of Christopher H. Steward ("Attorney Steward") and Wood & Flodge (collectively, "the Defendants").  We affirm.

By way of background, we first summarize that in December 2014, Husband and Wife, then married, executed a postnuptial agreement, prepared by attorney Defendants.  In April 2015, Husband commenced a divorce action. On June 28, 2016, the Bucks County Court of Common Pleas, Family Division ("Family Court"), issued an order, finding the postnuptial agreement was

_____

[1] Husband and his former spouse, Irina Zelkovich ("Wife") are now divorced. Nevertheless, as this legal malpractice action pertains to their divorce action, and they have the same last name, we refer to them as "Husband" and "Wife" for ease of discussion.

unenforceable. Almost three years later, in May 2019, Husband "received the master's recommendation, where he learned that [W]ife would receive over $1 million more than she would have received" under the postnuptial agreement. Second Amended Civil Action Complaint, 3/2/21, at ¶ 22 (unnecessary capitalization omitted). Husband ultimately settled the division of the marital estate "for amounts consistent with the master's recommendation." *Id*. at ¶ 23. We note that in the instant trial proceedings, the Defendants maintained that the Family Court did not provide a reason for finding the postnuptial agreement unenforceable. *See* N.T. Jury Trial, 6/7/23, at 40.

On June 29, 2020, Husband commenced the underlying legal malpractice action against the Defendants, raising three counts: negligence, breach of fiduciary duty, and breach of contract. Husband alleged: (1) in the divorce proceedings, Wife claimed "she was misled[ and] bullied, and did not enter into the agreement voluntarily;" and (2) Wife also claimed she did not receive consideration for the agreement, and Attorney "Steward failed to make clear within the agreement that" she in fact did. Second Amended Civil Action Complaint, 3/2/21, at ¶¶ 12-13. Husband averred that but for the "Defendants' negligent drafting of the [postnuptial] agreement, and failure to advise [Husband and Wife] to obtain independent counsel, the postnuptial agreement would have been enforceable." *Id*. at ¶ 20.

The Defendants filed a motion for judgment on the pleadings, invoking, *inter alia*, the statutes of limitations. In December 2021, the trial court granted the motion in part and denied it in part. First, the court found the negligence and breach of fiduciary duty claims were barred by the two-year statute of limitations, where the latest date the statute of limitations could have begun to run was June 29, 2016, when Husband's counsel received the Family Court's order invalidating the postnuptial agreement. However, the court found Husband's breach of contract claim was timely under the four-year statute of limitations, and thus permitted that count to proceed.

In May 2023, the Defendants filed a motion *in limine* to exclude Husband's legal expert witness from testifying about damages. The trial court conducted a hearing on June 1, 2023 — five days before trial was to begin — and granted the motion. The following day, Plaintiff took his expert witness' deposition "by video and, heeding the court's ruling, did not ask [her] opinion on [his] compensatory damages." Trial Court Opinion, 1/25/24, at 2. On June 5, 2023, however, the trial court informed the parties, *via* email, that it was reconsidering its ruling and invited the parties to file briefs. At some point, not clear from the record, the trial court reversed its initial order, thus allowing Husband to present expert evidence relating to compensatory damages. A jury trial commenced the following day, June 6, 2023. Husband did not present any additional testimony by his expert witness.

Next, we summarize that in opening argument to the jury, the Defendants' counsel stated that in the Family Court proceedings: (1) Wife testified that Husband "bullied" her and threatened to leave her if she did not sign the postnuptial agreement; (2) Wife's father testified that Husband was a "puppet master," was controlling, and "secluded" Wife from her family, prohibiting them from seeing Wife or their grandchildren; and (3) Wife's daughter — Husband's stepdaughter — testified that she and Husband had arguments, "he threw a baby bottle at her," and told her to leave the house. N.T. Jury Trial, 6/6/23, at 29-30. At a "lunch recess" later that day, Husband argued that defense counsel's statements, as to what Wife's father and daughter testified, were hearsay.[2] *See id*. at 91. Defense counsel replied that a statement under oath was not hearsay, and in any event, the statements were not "offered for the truth of the matter," but rather "to point out . . . what the [Family Court] heard." *Id*. at 91-92.

_____

[2] The Defendants aver that Husband has waived this issue for appeal, for failing to "make a timely specific objection at the proper stage," and instead raising it "long after the" opening argument. Defendants' Brief at 23.

We note the Defendants' opening argument spanned pages twenty through thirty-five of the June 6, 2023 trial transcript. On page ninety of the same transcript, Husband raised his objection to the opening argument. The Defendants responded to the merits, but did not challenge the timing of it. The jury trial spanned three days. Against the particular circumstances in this case, we decline to find Husband's objection was so untimely as to constitute waiver.

The trial court observed, "[I]t looks an awful lot like hearsay," and warned the Defendants' counsel, "At the conclusion of this trial, if I am not satisfied that [you have done what you state you will do], I will [consider] a curative instruction on this point." *Id*. at 92. Shortly thereafter, before the jury returned to the courtroom, Husband raised this hearsay issue again and moved for a mistrial. *See id*. at 104-05. The trial court denied it.

Thereafter, during Wife's direct examination, the Defendants asked whether her father and daughter testified in the Family Court proceedings. Wife responded that they had, but before the Defendants' next question, Husband raised a hearsay objection. The trial court sustained it, and the Defendants moved on to other questioning. *See* N.T., 6/7/23, at 39-40. We further note that in its final jury charge, the trial court instructed the jury that: (1) the lawyers were not witnesses and their statements were not evidence in this case; and (2) the jury could consider testimony given by Husband and Wife at the Family Court hearing, but not by any other person at that hearing. *See* N.T. Jury Trial, 6/8/23, at 23-24.

Husband testified in his case in chief. The Defendants called Wife as their witness. Husband cross-examined her, and asked, *inter alia*: (1) whether she was "already looking for other places to live" in December 2014, when they executed the postnuptial agreement; (2) whether Wife had previously testified that Attorney Steward was not truthful with her; and (3) whether Attorney Steward told her that she could not "waive child support in

- 5 -

the" postnuptial agreement. N.T., 6/7/23, at 42, 48, 49. The Defendants objected, arguing these question exceeded the scope of Wife's direct examination. Husband responded, pertinently, that Wife's direct examination testimony was "intended to show duress," and he sought to ask "what her intentions were when she [entered] into the" postnuptial agreement. *Id*. at 43. The trial court disagreed and sustained each of the Defendants' objections.

At the conclusion of trial, the jury found the Defendants breached their contract with Husband. However, it found the breach of contract was **not** a cause of damages to Husband. Thus, pursuant to the verdict slip instructions, the jury did not reach the issue of the amount of damages to award Husband.

Husband filed a post-trial motion, addressing each of the issues summarized above: (1) the dismissal of his negligence and breach of fiduciary duty claims under the statute of limitations; (2) the preclusion of testimony, by his expert witness, regarding damages; (3) the Defendants' opening argument references to alleged hearsay; and (4) the limiting of his cross-examination of Wife. The trial court conducted a hearing and denied the post-trial motion. On November 13, 2023, the court entered judgment in favor of the Defendants. Husband filed a timely notice of appeal, and both he and the trial court have complied with Pa.R.A.P. 1925.

Husband presents four issues for our review:

1. Did the Trial Court err by granting, in part, [the Defendants']
   Motion for Judgment on the Pleadings thereby dismissing Count

I (Negligence) and Count III (Breach of Fiduciary Duty) of [Husband's] Second Amended Complaint?

2. Did the Trial Court err by denying [Husband's] motion for a mistrial after [the Defendants] made references to hearsay testimony from the Family Court proceedings challenging the underlying post-nuptial agreement?

3. Did the Trial Court err by limiting [Husband's] cross-examination of witness [Wife]?

4. Did the Trial Court err by granting [the Defendants'] motion *in limine* limiting [Husband's] legal expert testimony regarding damages?

Husband's Brief at 4 (unnecessary capitalization omitted and issues reordered for ease of discussion).

In his first issue, Husband challenges the dismissal, under the statute of limitations, of his claims of negligence and breach of fiduciary duty. We consider the applicable standard of review:

When reviewing whether a trial court properly granted a motion for judgment on the pleadings, this Court's standard of review is plenary and we apply the same standard used by the trial court. The trial court must confine its consideration to the pleadings and relevant documents and must accept as true all well-pleaded statements of fact. A motion for judgment on the pleadings will only be granted where, based upon the pleadings and properly attached documents, there exists no material issues of fact and the moving party is entitled to judgment as a matter of law.

*Hoopes v. Hadley*, 315 A.3d 844, 847 (Pa. Super. 2024) (citations omitted).

"We will affirm the grant of [a motion for judgment on the pleadings] only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." *Wachovia*

***Bank, N.A. v. Ferretti***, 935 A.2d 565, 570 (Pa. Super. 2007) (citations omitted).

This Court has stated:

"[A]n action for legal malpractice may be brought in either contract or tort." . . . With regard to a breach of contract claim, "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large."

***Id***. at 570-71 (citations omitted).

An action sounding in negligence "must be commenced within two years." 42 Pa.C.S.A. § 5524(2); ***see also Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 277 (Pa. Super. 2016) (stating two-year statute of limitations applies to claim of breach of fiduciary duty).

[T]he trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty. . . .

. . . Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty.

An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. . . .

Pennsylvania favors strict application of the statutes of limitation. Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.

*Wachovia Bank, N.A.*, 935 A.2d at 572-73 (citations and emphasis omitted, and paragraph break added). "This Court has held that the determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination." *O'Kelly v. Dawson*, 62 A.3d 414, 419 (Pa. Super. 2013) (citation omitted).

On appeal, Husband asserts the trial court erred in finding the two-year statute of limitations, for his negligence and breach of fiduciary duty claims, began to run on June 29, 2016, when his attorney received the Family Court's order invalidating the postnuptial agreement. Instead, Husband asserts, his injury did not become "a reality" until May 2019, when he received notice of the master's recommendation and "learned for the first time that [Wife] would receive . . . $1 million [more than] what she would have received had the postnuptial agreement been enforced."[3] Husband's Brief at 37-38 (some punctuation omitted). Husband maintains he "had no way of knowing that he was aggrieved by [the Defendants'] negligence and breach of fiduciary duty until [he] knew he would have to pay" more than the postnuptial agreement's terms, and he "had no way of proving any damages until the master's recommendation." *Id*. at 37, 39 (unnecessary capitalization omitted). Husband reasons that had he commenced the underlying legal malpractice

_____

[3] Husband thus calculates that he commenced the instant suit, on June 29, 2020, within two years of May 2019.

suit within two years of the Family Court's June 2016 order: (1) the Defendants could have correctly argued that he failed to state an actionable claim because he had not yet suffered damages; and thus (2) this "lawsuit would have been dismissed." *Id*. at 40. Finally, Husband contends there were "genuine issues of material fact [that he] did not know if and to what extent he had suffered damages until May 2019." *Id*. at 40.

After review of the record, the parties' briefs, the applicable law, and the well-reasoned opinion of the trial court, we conclude Husband is not entitled to relief. The trial court opinion aptly applies the law set forth above and properly addresses and disposes of his claim. *See* Trial Court Opinion, 1/25/24, at 9-11 (finding: (1) under the "occurrence rule," Husband's "negligence and breach of fiduciary duty causes of action accrued when [the] Defendants rendered their legal services to" Husband and Wife in 2014; (2) but application of the "discovery rule" was appropriate in this legal malpractice action "because the invalidity of a postnuptial agreement would not be immediately apparent to a layperson;" (3) the latest date that the statute of limitations could possibly begin to run was June 29, 2016, when Husband's counsel received the Family Court order invalidating the postnuptial agreement; (4) Husband "cannot plausibly claim that he did not yet possess sufficient critical facts to be charged with notice that a wrong had been committed and that he may be entitled to redress [upon notification that] the agreement drafted by [the] Defendants [was] legally unenforceable;" and (5)

where Husband commenced this suit on June 29, 2020, the two-year statute of limitations barred his negligence and breach of fiduciary duty claims). Accordingly, we affirm on the basis of the trial court's opinion. We agree with the trial court that based upon the pleadings, there were no material issues of fact and the Defendants were entitled to judgment as a matter of law. *See Hoopes*, 315 A.3d at 847. Thus, no relief is due on Husband's first issue.

In his second issue, Husband asserts the trial court erred in denying a mistrial, based upon the Defendants' references to hearsay. We reiterate that in its opening argument, defense counsel stated that in the Family Court proceedings, Wife's father and daughter testified that Husband had controlling behavior. This Court has stated:

> The grant of a new trial because of counsel's improper remarks is within the discretion of the trial court. If the trial court determines that instructions to the jury to disregard the remarks are sufficient, an appellate court should be "reluctant to reverse since the trial judge is in a better position to see and understand the atmosphere of the trial and the effect the statement had on the jury." Whether the trial court abused its discretion in denying a new trial will be determined by "an examination of the remark made, the circumstances under which it was made and the precautions taken by court and counsel to remove its prejudicial effects."

*Hill v. Reynolds*, 557 A.2d 759, 765-66 (Pa. Super. 1989) (citations omitted).

We note that when reviewing an attorney's opening statements at trial:

> It is improper for counsel to present facts to the jury which are not in evidence and which are prejudicial to the opposing party; counsel may not comment on evidence to the effect that it removes an issue of credibility from the jury. Further,

- 11 -

> whether remarks by counsel warrant a new trial requires a determination based upon an assessment of the circumstances under which the statements were made and the precaution taken by the court and counsel to prevent such remarks from having a prejudicial effect. It is the duty of the trial judge to take affirmative steps to attempt to cure harm, once an offensive remark has been objected to. However, there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint.

*Young v. Washington Hospital*, 761 A.2d 559, 561-62 (Pa. Super. 2000) (citations omitted).

The Pennsylvania Rules of Evidence define "hearsay" as a statement that:

> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c)(1)-(2). Generally, hearsay is not admissible. *See* Pa.R.E. 802. Finally, we note: "The law presumes that the jury will follow the instructions of the court." *Brown v. Halpern*, 202 A.3d 687, 707 (Pa. Super. 2019).

On appeal, Husband contends that in the Defendants' opening argument, defense counsel, "with no intention of calling [Wife's father or daughter] to testify subject to cross-examination at trial," made "repeated references to highly inflammatory hearsay testimony presented during the Family Court proceeding . . . namely, that [Husband] was a 'puppet master' who bullied [Wife], secluded her and her grandchildren from her family,

argued with [Wife's] daughter . . . , threw a baby bottle at her, and kicked her out of the house." Husband's Brief at 30-31. Husband recounts that the trial court "admonished counsel" that "it look[ed] an awful lot like hearsay." *Id*. at 31. However, Husband maintains, defense counsel "doubled down by raising the inflammatory hearsay . . . again during [Wife's] direct examination." *Id*. Husband acknowledges the trial court sustained his objection to this questioning, but argues the court should have given — but failed to give — "a prompt and specific instruction to the jury to disregard any references to whether [Wife's] father and daughter testified at the Family Court proceeding." *Id*. at 31-32. Husband further claims that the Defendants' "repeated violation of the trial court's order" amounted to "extraordinary circumstance[s]," not "alleviated by the trial court's belated, benign and ambiguous instruction at the close of the case." *Id*. at 32-33. Husband concludes the trial court's actions allowed "the jury to find that although [the Defendants] breached the contract, [he] was the 'puppet master' and cause of his own damages." *Id*. at 24, 29. Husband avers he is entitled to a new trial.[4]

_____

[4] Husband acknowledges the trial court's opinion that he could have called Wife in his own case in chief, but asserts, without further explanation, that "she would have been a hostile witness." Husband's Brief at 28. As this discrete issue did not arise in the trial proceedings, we do not address it on appeal.

The trial court addressed Husband's claim as follows. Following Husband's objection to the Defendants' opening argument, the trial

> court ruled that any further statements substantiating the Family Court testimony of persons other than [Husband and Wife] would be ruled inadmissible, and subject to corrective instruction.
>
> During [the] Defendants' case in chief, the court permitted [Wife] to testify as to her own Family Court testimony[, but] sustained [Husband's] objection when she was asked whether her father and daughter testified on her behalf.
>
> When charging the jury, the court instructed the jurors that they "may consider testimony provided by [Husband and Wife] [from the Family Court hearing," [but] they "may not consider the testimony of any other person who may have appeared at that hearing. Given the absence of extraordinary circumstances, a curative instruction was adequate to cure any prejudice to [Husband]. The jury is presumed to have heeded the instruction. The references to the Family Court testimony did not prejudice [Husband] or warrant a mistrial.

Trial Court Opinion, 1/25/24, at 8 (citations omitted and paragraph break added).

We address Husband's various claims *seriatim*. First, we disagree with his premise — that the Defendants' statements in opening argument met the definition of hearsay. It is clear that the Defendants' attorney did not offer his own opening argument statements into evidence. **See** Pa.R.E. 801(c)(2) (defining hearsay, in part, as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"); **see also** N.T., 6/8/23, at 23 (trial court instructing, in final jury charge: "The lawyers are not witnesses and what they say is not evidence in the case. Their opening

- 14 -

statements, . . . arguments, . . . questions, . . . comments, closing arguments, none of that is evidence").

Nevertheless, we construe Husband to be challenging defense counsel's alleged improper comments, and find no abuse of discretion. **See Hill**, 557 A.2d at 765-66. We agree with the trial court that its jury instruction ameliorated any prejudice caused by the Defendants' counsel's statements, and we presume the jury followed the instruction. **See Young**, 761 A.2d at 561-62; **see also Brown**, 202 A.3d at 707. We reject Husband's claim that the statements were so inflammatory as to cause extraordinary circumstances warranting a new trial. Instead, when considered against the voluminous testimony and arguments over the three-day jury trial, the attorney's statements were not "so offensive or egregious that no curative instruction can adequately obliterate the taint." **Young**, 761 A.2d at 561-62.

Next, we determine no relief is due on Husband's claims concerning the Defendants' direct examination of Wife. The Defendants asked Wife about the testimony **she** gave in Family Court, as permitted by the trial court. The following exchange then occurred:

> [Defendants' counsel: Y]our father also testified at the [Family Court] hearing[,] didn't he?
>
> [Wife:] Yes, he did.
>
> Q. All right. And your daughter also testified at the hearing, correct?
>
> A. Yes.

Q. And she testified on your behalf.

A. Yes.

Q. In any effort to invalidate —

N.T., 6/7/23, at 38.

At this juncture, Husband objected on hearsay grounds. We emphasize, and Husband acknowledges, that the trial court **sustained** his hearsay objection. **See id**. at 39. As the court ruled in his favor, before Wife responded to the questions, we disagree that he is entitled to any relief in this regard.

Finally, to the extent that Husband challenges the sufficiency or timeliness of the trial court's jury instruction, we conclude he has waived such an issue, as he did not raise an objection before the trial court. **See Morrissey v. St. Joseph's Preparatory School**, 323 A.3d 792, 804 (Pa. Super. 2024) (stating that "to preserve a jury-instruction challenge for appeal — absent a specific contemporaneous objection — a litigant must file a proposed point for charge, and the trial court must explicitly accept or reject the proposed instruction"); **see also** N.T., 6/8/23, at 14 (trial court stating during charging conference, without objection from Husband, that it would instruct the jury it could consider Family Court testimony given by Husband and Wife, but not by any other person at that hearing), 42 (neither party raising any objection at the conclusion of the jury charge). For the foregoing reasons, we conclude no relief is due on Husband's second issue.

In his third issue, Husband avers the trial court erred in limiting his cross-examination of Wife. This Court has explained:

> The scope of cross-examination is within the sound discretion of the trial court, and we reverse only for an abuse of discretion. In exercising this discretion, the trial court may limit cross-examination due to concerns that the matter is collateral, would likely confuse or mislead the jury, or would waste time.

*Kimble v. Laser Spine Institute, LLC*, 264 A.3d 782, 797 (Pa. Super. 2021) (*en banc*) (citations omitted). Additionally:

> The admissibility of evidence is within the sound discretion of the trial court, and we will not overturn its decisions in this regard absent an abuse of discretion or misapplication of law. We also do not reverse such a ruling unless the objecting party sustained prejudice. "An abuse of discretion is not merely an error of judgment. It requires a showing of manifest unreasonableness, partiality, ill will, or such lack of support as to be clearly erroneous. Under this standard, the party challenging the trial court's discretion on appeal bears a heavy burden."

*Id*. at 795 (citations omitted).

Pennsylvania Rule of Evidence 611(b) provides: "Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility, however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination. . . ." Pa.R.E. 611(b).

First, Husband asserts the trial court erred in finding Wife's direct examination "was limited to what happened at the meetings with [him] and [Attorney] Steward in December 2014 and at the Family Court proceeding." Husband's Brief at 27. Instead, Husband insists, the Defendants asked Wife

questions, which "elicited and implied" that the "Family Court invalidated the postnuptial agreement" because Wife signed it under duress from him, and not because of the Defendants' "legal malpractice." *Id*. (some punctuation omitted). Husband thus denies that his questions exceeded the scope of direct examination. Husband avers the trial court's ruling prejudiced him, "by allowing the jury to hear evidence that the postnuptial agreement was invalidated due to [his] bullying[,] without affording [him] the opportunity to cross-examine his accuser."[5] *Id*. at 25 (some punctuation omitted).

In addressing Husband's issues, the trial court first summarized:

> During trial, [Wife] was asked on direct examination by [the] Defendants' counsel about any meetings she had with [Attorney] Steward in his capacity as an attorney prior to December 2014, [when Husband and Wife executed the

---

[5] Husband also argues that the trial court erred in precluding him "from asking questions attacking" Wife's credibility, "in response to her [direct examination testimony] that she signed the postnuptial agreement under duress and" without knowing the substance of it. Husband's Brief at 25 (some punctuation omitted). Furthermore, Husband avers he sought to address Wife's direct examination testimony that she did not know the contents of the postnuptial agreement at the time she signed it. *See id*. at 28.

We determine Husband has waived both these discrete claims — concerning Wife's credibility and her awareness of the substance of the postnuptial agreement — as he did not raise them before the trial court. *See* N.T., 6/7/23, at 43 (Husband's counsel arguing, in response to the Defendants' objection that his questions exceeded the scope of cross-examination, that "the entire testimony is intended to show duress [*sic*]" and "this goes directly to what [Wife's] intentions were when she was entering into the" postnuptial agreement). *See also* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *Morrissey*, 323 A.3d at 805 n.9 (stating that "[a] new and different theory of relief may not be successfully advanced for the first time on appeal").

postnuptial agreement,] the character of the meetings she had with [Attorney] Steward regarding the postnuptial agreement, and the 2016 Family Court hearing.

On cross-examination, [Husband] asked: 1) whether it was true that by December 2014, she was already looking for places to live; 2) whether she previously testified that [Attorney] Steward was truthful with her during the meetings; and 3) whether [Attorney] Steward told her that she could not waive child-support in the agreement. . . .

Trial Court Opinion, 1/25/24, at 6 (citations omitted and paragraph break added).

The trial court considered Husband's arguments that his cross-examination questions: (1) "were meant to 'undercut the false narrative[,] elicited during . . . direct examination[,] that [Wife] entered into the post-nuptial agreement under duress or to save her marriage;'" and (2) went "directly to what [Wife's] intentions were when she was entering into the" postnuptial agreement. *Id*. (citation omitted). The court found:

Although [the] Defendants . . . asked [Wife] whether she showed distress in front of [Attorney] Steward during their . . . meeting, she was not asked about her subjective beliefs about signing the agreement. [The] Defendants' direct examination did not concern [Wife's] intentions. [She] was asked about the character of her meetings with [Attorney] Steward, and the 2016 Family Court hearing. Her testimony was limited to what she expressed to [Attorney] Steward, not what she may have felt or believed about signing the agreement. . . .

*Id*. at 6-7 (citations omitted).

After careful review of the record, we determine the trial court did not abuse its discretion in finding the above questions to Wife exceeded the scope of direct. *See Kimble*, 264 A.3d at 797. First, we conclude the trial court

properly summarized the scope of Wife's direct examination — which we note spanned seventeen pages of trial testimony.[6]  On appeal, Husband does not identify his particular questions, posed to Wife, ruled by the trial court to have exceeded the scope of direct.  We reiterate that they were: (1) whether Wife was "already looking for other places to live" in December 2014; (2) whether Wife had previously testified that Attorney Steward was not truthful with her; and (3) whether Attorney Steward told her that she could not "waive child support in the" postnuptial agreement.  N.T., 6/7/23, at 42, 48, 49.

Even in accepting Husband's premise that Wife's direct examination pertained to whether she signed the postnuptial agreement under duress,

---

[6] Wife testified, *inter alia*, as follows: (1) in December 2014, she and Husband initially approached Attorney Steward to "discuss . . . wills;" (2) however, at that meeting, Husband also discussed a postnuptial agreement, of which Wife was not previously aware; (3) at the meeting, she and Husband argued about "the real estate" — however, Wife also testified that Husband did not "say anything" during this argument; (4) after the meeting, Husband told Wife that if she wished to continue the marriage, it "would be a problem" if she did not sign the postnuptial agreement; (5) subsequently, Wife called Attorney Steward and "waived all [her] rights [to] the real estate and all aspects of the contract [*sic*];" (6) eleven days after the meeting with Attorney Steward, Husband and Wife met with him again and signed the postnuptial agreement; and (7) when asked whether she "show[ed] any distress to" Attorney Steward at that meeting, Wife stated she "was under a lot of stress" and may have been crying, and she did not read the agreement.  N.T., 6/7/23, at 25-29, 32.  On direct examination, Wife also testified that she previously testified, at the Family Court hearing, to the following: (1) Husband had told her that if she did not sign the postnuptial agreement, there would be no marriage; and (2) at that time, her "priority was not the finances, [but rather] to save [the] marriage."  **Id**. at 37-38.  Finally, at this trial, Wife testified that the Family Court did not provide a reason for invalidating the postnuptial agreement.  **See id**. at 40.

Husband does fails to explain how each of his above questions related to whether Wife signed the postnuptial agreement under duress. Again, he does not even identify the particular questions he now argues the trial court should have permitted. In the absence of discussion of these particular questions, we conclude no relief is due on Husband's third issue. **See also** Pa.R.A.P. 2119(a) (providing that appellant's argument shall include "such discussion and citation of authorities as are deemed pertinent").

In his final issue, Husband avers the trial court erred in "granting [the] Defendants' motion *in limine* limiting [his] legal expert testimony regarding damages." Husband's Brief at 34. In support, he first argues the trial court granted the motion "under the mistaken belief that Pennsylvania law limited damages in a malpractice case to underlying legal fees." Husband's Brief at 35. Husband maintains that instead, "[c]onsequential damages are appropriate in a breach of contract case." *Id*. Next, Husband acknowledges that the trial court subsequently reversed its ruling, permitting him to present a calculation of compensatory damages. However, Husband insists, "by then, the damage had been done because [the legal expert's] testimony was already prerecorded in accordance with the trial court's ruling," and he "could not recall [her] to re-testify at trial, [as] she had already testified." *Id*. at 36. Husband alleges he could not present evidence in support of his claim for damages.

In denying relief on this issue, the trial court reiterated that on the verdict slip, the jury found: (1) the Defendants breached the contract with Husband; (2) but the breach was **not** a cause of damages to Husband; and thus (3) the jury did not reach the issue of the amount of damages to award Husband. The court found Husband did not suffer prejudice, as the expert's excluded testimony pertained to an issue not reached by the jury. The court stated: "The excluded testimony would have concerned whether [his] damages included compensatory damages other than . . . legal fees, such as what he would have received had the postnuptial agreement been enforced." Trial Court Opinion, 1/25/24, at 9. Accordingly, the court concluded, any "exclusion of the testimony was not material to the outcome of the case." **Id**.

We agree with the trial court's analysis, and similarly conclude that because the jury found no causation, it did not reach the issue — the amount of damages to award — that was the subject of the excluded expert testimony. Thus, any evidence concerning the nature or amount of damages was not material to the outcome of the case.

Furthermore, we conclude no relief is due on Husband's claim that the trial court's reversal of its ruling was untimely — because "by then, the damage had been done because [his expert's] testimony was already

prerecorded in accordance with the trial court's [initial] ruling."[7]  Husband's Brief at 36 (unnecessary capitalization omitted).  The Defendants respond that Husband "chose to videotape his expert's testimony before trial *in lieu* of having her testify live at trial."  Defendants' Brief at 33.  Additionally, the Defendants reason that after the trial court reversed its ruling, Husband "chose to neither call [the expert witness] in person to testify during his case in-chief nor recall her in rebuttal.  . . . As a result, any alleged prejudice was caused solely by [Husband's] own trial tactics."  **Id**.

In his reply brief, Husband dismisses the Defendants' above observations as "nonsense."  Husband's Reply Brief at 9.  He insists, without citation to legal authority, that his expert "had already testified," and the fact that her "videotaped testimony had not been played for the jury does not mean that [she] had not already provided her sworn testimony."  **Id**.

---

[7] Husband does not cite the place in the record where he raised this argument, thus preserving it for appeal.  **See** Pa.R.A.P. 2117(c) (requiring appellant's statement of the case to cite the place in the record where they raised or preserved the issue for appeal), 2119(e).

Meanwhile, we observe the certified record does not include the trial court's order reversing its motion *in limine* ruling, to permit expert testimony concerning damages.  Neither the parties nor the trial court explain how the ruling was announced to the parties, given the short time period between: the court's June 5, 2023 email stating it was reconsidering its order; and the June 6, 2023 commencement of trial.  Thus, we cannot review whether, for example, Husband argued he was not able to call his expert to testify at trial, or requested additional time to prepare for trial in light of the trial court's ruling.  In any event, Husband makes no claim on appeal that he did.

Husband's arguments do not merit relief. Again, he cites no legal authority for the proposition that once a **pre-trial deposition** has been videotaped, a party may not obtain additional testimony from that witness for **trial**. **See** Pa.R.A.P. 2119(a). Additionally, we disagree with his premise that his expert had in fact "already testified" at trial, and he "could not recall [her] to re-testify." Husband's Brief at 36. The fact that the expert witness gave "sworn testimony" in a **pre-trial** deposition, regardless of whether Husband subsequently played the video of her deposition at trial, does not mean the expert in fact 'testified" at a trial that had not yet commenced. Husband's Reply Brief at 9. Instead, Husband merely presented the videotaped deposition as an exhibit. Accordingly, we conclude no relief is due on Husband's fourth issue.

For the foregoing reasons, we affirm the judgment entered upon the jury's verdict in favor of the Defendants. As we adopt part of the trial court's opinion in disposing of this appeal, we direct that in the event of further proceedings, the parties shall attach a copy of the Honorable Ann M. Butchart's January 25, 2024, trial court opinion to any filings of this memorandum.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2025

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| DANIEL ZELIKOVICH | |
|---|---|
| *Plaintiff,* | Superior Court |
| v. | 2975 EDA 2023 |
| CHRISTOPHER H. STEWARD, ESQUIRE, et al | Trial Court Docket: June Term, 2020 |
| *Defendants.* | No. 01802 |

**OPINION**

BUTCHART, J.                                                      January 24, 2024


Daniel Zelikovich ("Plaintiff") appeals this court's June 9, 2023 Order entering judgment

in favor of Christopher H. Steward, Esquire and Wood & Floge ("Defendants"), and against

Plaintiff, upon the conclusion of a four-day jury trial.

Plaintiff asserts *inter alia* that the court erred in denying Plaintiff's Motion for

Vacatur/Striking/Opening/Removal of the Trial Verdict and Requesting a New Trial; in limiting

the cross-examination of Plaintiff's ex-wife, Irina Zelikovich; in denying Plaintiff's motion for a

mistrial based on the introduction of inadmissible hearsay; in limiting the testimony of Plaintiff's

legal expert, Toni Lee Cavanaugh; and in granting, in part, Defendants' Motion for Judgment on

the Pleadings thereby dismissing Count I (Negligence) and Count II (Breach of Fiduciary Duty)

from Plaintiff's Second Amended Complaint.

Plaintiff's claims are without merit for the reasons stated below.

OPFLD-Zelikovich Vs Wood

20060180200178

**I.    PROCEDURAL HISTORY and FACTS**


Plaintiff commenced this civil action on June 29, 2020. Plaintiff alleged professional

malpractice, negligence, breach of contract, and breach of fiduciary duty stemming from

1

Defendants' joint representation of Plaintiff and his ex-wife, Irina Zelikovich ("Ms. Zelikovich"), in the December 2014 execution of a postnuptial agreement prepared by Defendant Christopher H. Steward ("Defendant Steward"). Pl.'s Second Am. Civil Action Compl. at ¶¶ 3, 20, 24-27. In June 2016, the Court of Common Pleas of Bucks County, Family Division ("Family Court"), found the underlying postnuptial agreement unenforceable. Id. at ¶ 16.

Defendants filed a Motion for Judgment on the Pleadings on July 21, 2021, arguing for dismissal of all three counts in Plaintiff's Second Amended Complaint pursuant to Pa R. Civ. P. 1034 because they were barred by the applicable statutes of limitation. Defs.' Mot. for J. on the Pleadings at ¶ 19. On December 21, 2021, the court granted Defendants' motion as to Counts I (Negligence) and II (Breach of Fiduciary Duty), but not as to Count III (Breach of Contract).[1]

Defendants filed three motions *in limine* in May 2023.[2] The court granted, in part, Defendants' motion to preclude the testimony of Plaintiff's legal expert, Toni Lee Cavanaugh, holding Ms. Cavanaugh's proposed testimony regarding the calculation of Plaintiff's damages inadmissible. Pl.'s Mot. for Vacatur/Striking/Opening/Removal of the Trial Verdict and Requesting a New Trial at ¶ 21. Plaintiff took Ms. Cavanaugh's deposition before trial by video and, heeding the Court's ruling, did not ask Ms. Cavanaugh to offer her opinion on Plaintiff's compensatory damages. Id. at ¶ 23. The Court ultimately reconsidered and allowed Plaintiff's compensatory damages to be presented to the jury[3], but, because Ms. Cavanaugh's testimony

---

[1] This pre-trial ruling was made by the Honorable Judge Stella Tsai on December 21, 2021. Pa.R.A.P. Rule 1925(a) requires appeals to be served upon the judge who issued the order complained of on appeal, which Plaintiff has failed to do, but does not require separate Pa.R.A.P. 1925(a) opinions from each judge where the basis for the pre-trial ruling is clear from the order and/or opinion issued by the judge at the time the ruling was made. Pa.R.A.P. Rule 1925(a). Judge Tsai included an extensive discussion of the basis of the court's Order, which reasoning is incorporated into this Opinion. *see* Discussion.

[2] The other two motions, which are not the subject of this Appeal, sought to preclude Plaintiff's claim for breach of contract under the Gist of the Action Doctrine, and to preclude Plaintiff's claim for emotional distress damages.

[3] Plaintiff's damages proofs included "what [Plaintiff] would have received with the post-nup, $2,134,350." Notes of Testimony ("N.T. II"), June 7, 2023 at 4. Plaintiff's exhibits, including his damages proofs, were moved into the record. Id. at 15. The court instructed the jury that the measure of damages in this legal malpractice case is "the

was prerecorded, evidence of Plaintiff's compensatory damages was not supported by expert testimony. Id. at ¶ 22.

Jury trial began on June 5, 2023. During Defendants' opening argument, counsel referred to testimony given during the Family Court proceeding by Ms. Zelikovich's daughter and father. Notes of Testimony ("N.T. I"), June 6, 2023 at 29-30. Plaintiff objected to references to this testimony as hearsay and moved for a mistrial on the basis of its introduction. Id. at 104-105. The Court instructed the parties that any further reference to or substantiation of witness testimony from the Family Court proceeding, other than the testimony of persons called as witnesses during this proceeding, would be subject to curative instruction. Id. The Court denied Plaintiff's motion for mistrial. Id.

On the second day of trial, Defendants offered Ms. Zelikovich as a witness. N.T. II at 23. Defendants' counsel asked Ms. Zelikovich if her daughter testified on her behalf at the Family Court proceeding, and Plaintiff's hearsay objection was sustained. Id. at 38-39. On cross-examination, Plaintiff's counsel asked Ms. Zelikovich whether she was looking for a new place to live in December 2014. Id. at 42. Defendants' counsel objected to the question as beyond the scope of direct examination. Id. at 43. The court sustained the objection. Id. Plaintiff's counsel argued that this line of questioning is crucial in showing that Ms. Zelikovich did not sign the post-nuptial agreement under duress. Id. Defendants' counsel objected to a question on cross-examination about Ms. Zelikovich's prior deposition testimony: that is, whether she believed Defendant Steward was truthful with her during their meetings about the postnuptial agreement.

difference between the amount that Mr. Zelikovich would have received under the postnuptial agreement provided by Defendant Steward minus the amount he actually received in the settlement." Notes of Testimony (N.T. III"), June 8, 2023 at 14. During his closing argument, Plaintiff's counsel told the jury that Plaintiff's damages include what he would have received in the postnuptial agreement. Id. at 59. During his closing argument, Defendants' counsel acknowledged that Plaintiff "thinks he's entitled to the difference between what he would have gotten if the agreement was enforced and what he actually received, you know, if this agreement that wasn't enforceable because of its terms...[was enforced]" Id. at 79.

Defendants' objection that the question went beyond the scope of direct examination was sustained. Id. at 50.

On June 8, 2023, the jury returned a verdict in favor of Defendants. The jury determined that Defendants breached their contract for legal services but the breach did not cause injury to Plaintiff. Notes of Testimony ("N.T. IV"), October 12, 2023 at 8. Plaintiff filed a post-trial motion on July 6, 2023, requesting the court vacate the verdict and order a new trial. Following oral argument, the court denied Plaintiff's post-trial motion on November 3, 2023. Plaintiff filed this instant appeal to the Superior Court of Pennsylvania on November 14, 2023.

## II.    ISSUES ON APPEAL

In his December 5, 2023 1925(b) Statement, Plaintiff contends that:

1.  The court erred in limiting Plaintiff's cross-examination of witness Irina Zelikovich. 1925(b) Statement at ¶ 2.

2.  The court erred in denying Plaintiff's motion for a mistrial after Defendant's counsel made references to hearsay testimony from the Family Court proceeding challenging the underlying post-nuptial agreement. Id. at ¶ 3.

3.  The court erred in granting Defendants' motion *in limine* limiting Plaintiff's legal expert's testimony regarding damages. Id. at ¶ 4

4.  The court erred in denying Plaintiff's Motion for Vacatur/Striking/Opening/Removal of the Trial Verdict and Requesting a New Trial which asserted the above contentions. Id. at ¶ 1

5.  The court erred in granting, in part, Defendants' motion for judgment on pleadings thereby dismissing Count I (Negligence) and Count II (Breach of Fiduciary Duty) of Plaintiff's Second Amended Complaint. Id. at ¶ 5.

4

## III. DISCUSSION

**1. Plaintiff was properly limited in cross-examining Irina Zelikovich because Plaintiff's questions went beyond the scope of Defendants' direct examination.**

Cross-examination must be limited to the subject matter of the direct examination. Pa. R.E. 611(b). The scope of cross-examination is a matter within the discretion of the trial court. Commonwealth v. Largaespada, 184 A.3d 1002, 1009 (Pa. Super. 2018). Granting a new trial on the basis of an evidentiary ruling requires that the ruling was erroneous and affected the jury's verdict. Schmidt v. Boardman, 958 A.2d 498 (Pa. Super. 2008), aff'd, 11 A.3d 924 (Pa. 2011).

Few appellate decisions directly address Plaintiff's argument that he should have been permitted to "undercut a false narrative" underlying Defendants' global position by cross-examining Defendants' witness who was not called to testify to facts supporting the "false narrative," and Plaintiff cites to no prior decisions at all in his memorandum of law in support of his post-trial motion when raising this argument. Pl.'s Br. in Supp. of Pl.'s Post-Trial Mot. for Vacatur/Striking/Opening/Removal of the Trial Verdict and Requesting a New Trial. In Commonwealth v. Cessna, Appellant was convicted of first degree murder for killing his step-father. Com. v. Cessna, 371 Pa. Super. 89, 537 A.2d 834 (1988). During trial, the Commonwealth called Appellant's mother, the wife of the victim, as a witness. Id. at 97. On cross-examination, Appellant attempted to question the witness about her own possible motives for the killing. Id. The Commonwealth objected to this line of questioning as beyond the scope of direct, the trial court sustained the objection, and the Superior Court upheld the trial court, reasoning that, though "[c]ross-examination may be used to test a witness's story" invoked on direct examination, "to impeach credibility, and to probe a witness's motive for testifying,"

5

questioning the witness "about [her] motives for doing the killing rather than motives for testifying... clearly [goes] beyond the scope of direct and outside permissible impeachment inquiry." Id.

During trial, Ms. Zelikovich was asked on direct examination by Defendants' counsel about any meetings she had with Mr. Steward in his capacity as an attorney prior to December 2014, the character of the meetings she had with Mr. Steward regarding the postnuptial agreement, and the 2016 Family Court hearing. N.T. II at 23-40. On cross-examination, Plaintiff asked: 1) whether it was true that by December 2014, she was already looking for places to live (N.T. II at 42); 2) whether she previously testified that Mr. Steward was truthful with her during the meetings; and 3) whether Mr. Steward told her that she could not waive child-support in the agreement. N.T. II at 48-50. The trial court sustained Defendants' counsel's objection to each question as beyond the scope of direct examination. N.T. II at 43, 49-50.

Plaintiff argues that his questions were meant to "undercut the false narrative elicited during Defendant's direct examination that Irina entered into the post-nuptial agreement under duress or to save her marriage." Pl.'s Post-Trial Mot. for Vacatur/Striking/Opening/Removal of the Trial Verdict and Requesting a New Trial at ¶ 13. Plaintiff argues that his cross-examination "goes directly to what her intentions were when she was entering into the post-nup." N.T. II at 43. Although Defendants' counsel asked Ms. Zelikovich on direct whether she showed distress in front of Mr. Steward during their December 2014 meeting, she was not asked about her subjective beliefs about signing the agreement. Id. at 32. Defendants' direct examination did not concern Ms. Zelikovich's intentions. Ms. Zelikovich was asked about the character of her meetings with Defendant Steward, and the 2016 Family Court hearing. Her testimony was limited to what she expressed to Defendant Steward, not what she may have felt or believed

6

about signing the agreement. Plaintiff's questions during cross-examination probing her intentions in signing the agreement therefore exceeded the scope of Defendants' direct examination. Under the ruling of Com. v. Cessna, questions regarding witness motives and intentions related to conduct underlying the litigation, rather than witness motive for testifying, are beyond permissible impeachment inquiry. The court properly found that Plaintiff's questions exceeded the scope of the direct examination of Ms. Zelikovich.

## 2. The court properly denied Plaintiff's motion for a mistrial.

Admission of evidence is within the discretion of the trial court. Hawkey v. Peirsel, 869 A.2d 983, 989 (Pa. Super. 2005). Granting a new trial on the basis of an evidentiary ruling requires a determination that the ruling was erroneous, and that it affected the jury's verdict. Schmidt, 958 A.2d 498. "A prompt and effective curative instruction, in the absence of extraordinary circumstances…will suffice to cure any prejudice suffered by the complaining party." Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div., 2001 PA Super 232, ¶ 35, 781 A.2d 1263, 1275 (2001), aff'd sub nom. Mount Olivet Tabernacle Church v. Edwin Wiegand Div., 571 Pa. 60, 811 A.2d 565 (2002). It is well settled that juries are presumed to heed curative instructions. Steltz v. Meyers, 265 A.3d 335 (Pa. 2021).

Plaintiff's motion for mistrial was based on the improper introduction of hearsay evidence. N.T. I at 105. Plaintiff maintained that a curative instruction would be inadequate to cure any prejudice. N.T. II at 39, 57-58. Plaintiff cited references in Defendants' opening statement to witness testimony given during the Family Court proceeding. N.T. I at 105. In his opening statement, Defendants' counsel stated that Ms. Zelikovich testified in Family Court that Plaintiff bullied her, and that "her father [also] testified to that." N.T. I at 29. Counsel also stated

7

that Ms. Zelikovich's daughter testified in Family Court that Ms. Zelikovich and Plaintiff got in arguments "sometimes over what classes she would take in school. They got in an argument and he threw a baby bottle at her. And she got so upset she left the house." N.T. I at 30.

Plaintiff objected to references to the Family Court testimony as hearsay. Id. at 90-91. The court ruled that any further statements substantiating the Family Court testimony of persons other than Plaintiff and Ms. Zelikovich would be ruled inadmissible, and subject to corrective instruction. N.T. I at 104-105. During Defendants' case in chief, the court permitted Ms. Zelikovich to testify as to her own Family Court testimony. N.T. II at 38-39. The Court sustained Plaintiff's objection when she was asked whether her father and daughter testified on her behalf. Id.

When charging the jury, the court instructed the jurors that they "may consider testimony provided by Daniel Zelikovich or Irina Zelikovich [from the Family Court] hearing," and that they "may not consider the testimony of any other person who may have appeared at that hearing." N.T. III at 14. Given the absence of extraordinary circumstances, a curative instruction was adequate to cure any prejudice to Plaintiff. see Siegal v. Stefanyszyn, 718 A.2d 1274 (Pa. Super. Ct. 1998) (holding that a trial court's curative instruction was insufficient to overcome prejudice to Plaintiff where Defendants' counsel made knowingly false statements during closing argument). The jury is presumed to have heeded the instruction. Steltz, 265 A.3d 335. The references to the Family Court testimony did not prejudice Plaintiff or warrant a mistrial.

### 3. Any limitation of Plaintiff's expert testimony did not prejudice Plaintiff because the jury did not reach the issue of damages.

A new trial is not warranted unless the complained-of error was material to the outcome of the case. Harman ex rel. Harman v. Borah, 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000). If

the complaining party is unable to demonstrate that it has suffered harm as a result of the error, the error is harmless. Id. "The harmless error doctrine underlies every decision to grant or deny a new trial." Id.

At trial, Plaintiff sought to introduce the testimony of Toni Lee Cavanaugh. Pl.'s Post-Trial Motion at ¶¶ 20-21. Defendants filed a motion *in limine* to preclude introduction of Ms. Cavanaugh's testimony regarding the calculation of Plaintiff's damages. The Court granted Defendants' motion and ruled that Plaintiff's damages were limited to his underlying legal fees. Ultimately, however, the Court permitted evidence of compensatory damages other than underlying legal fees. Id. at 22-23. During Ms. Cavanaugh's prerecorded video testimony, Plaintiff limited his questioning in accordance with the Court's order. N.T. IV at 7-8.

The jury concluded that, although Defendants breached their contract, the breach did not cause injury to Plaintiff. Plaintiff argues that, if the jury heard Ms. Cavanaugh's testimony about damages incurred by Plaintiff, it could have reasoned that the breach injured Plaintiff. N.T. IV at 8. The excluded testimony would have concerned whether Plaintiff's damages included compensatory damages other than underlying legal fees, such as what he would have received had the postnuptial agreement been enforced. Pl.'s Post-Trial Motion at ¶ 21; N.T. IV at 8. The testimony would not have concerned whether Defendants' breach was a causal factor in the Family Court's decision to invalidate the postnuptial agreement, so the exclusion of this testimony was not material to the outcome of the case.

4. **The court properly granted, in part, Defendants' Motion for Judgment on the Pleadings because Plaintiff's negligence and breach of fiduciary duty claims were barred by the applicable statutes of limitation.[4]**

---

[4] As noted in Footnote 1, these motions were ruled on by the Honorable Judge Stella Tsai. The following section incorporates the well-reasoned analysis contained in Judge Tsai's December 21, 2021 Order.

A "[j]udgment may be entered on the pleadings only in the clearest of cases." Puleo v. Broad St. Hosp., 267 Pa.Super. 581, 584, 407 A.2d 394, 396 (1979). "When considering a motion for judgment on the pleadings, a court must limit its review of the facts to those appearing in the pleadings themselves." Id. "The party moving for judgment on the pleadings must admit the truth of all the allegations of his adversary and the untruth of any of his own allegations that have been denied by the opposing party." Pfister v. City of Philadelphia, 963 A.2d 593, 597 (Pa.Cmwlth. 2009).

Pennsylvania has a two-year statute of limitations for negligence and breach of fiduciary duty claims, and a four-year statute of limitations for breach of contract claims. 42 P.S. § 5524 (2004); 42 P.S. § 5525 (2004). The trigger for the accrual of a legal malpractice action is the occurrence of the breach of the duty owed to the client ("the occurrence rule"), not when the client first realizes actual loss.[5] Communications Network International, Ltd. v. Mullineaux, 187 A.3d 951, 961 (Pa. Super. Ct. 2018). However, the statute of limitations can be tolled where the application of the "discovery rule" is appropriate. Where "the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause," the statute of limitations will begin to run only "when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed" and that he may be entitled to redress. Wachovia, 935 A.2d at 572-573, Communications Network International, 187 A.3d at 961 (citing Meehan v. Archdiocese of Philadelphia, 870 A.2d 912, 919 (Pa. Super. 2005)) (emphases omitted).

---

[5] Plaintiff argues that his cause of action did not accrue until May 2019, when the Family Court Master issued a decision awarding monetary damages arising from the invalidation of the postnuptial agreement. Plaintiff's Response in Opposition to Defendants' Motion for Judgment on the Pleadings. This is a variation of the "actual loss" argument which has been rejected by the Pennsylvania appellate courts. Wachovia Bank v. Ferretti, 935 A.2d 565, 571-573 (Pa. Super. 2007). Plaintiff cites as authority for the adoption of the "actual loss" rule the Superior Court opinion in M&G, LLC v. Servant Investment Fund, No. 57 WDA 2019 (Pa. Super. Feb 22, 2021). This unpublished opinion has been withdrawn and can no longer be accessed.

10

The question of when a plaintiff knew of or should have known of the cause of their injury is generally reserved for the finder of fact. Fine v. Checcio, 870 A.2d 850, 862 (Pa. 2005). When the facts averred in the pleadings reflect that malpractice claims are time barred and recovery is impossible, however, such claims may be dismissed by way of a Motion for Judgment on the Pleadings. *see* Schade v. Lauer, 240 A.3d 956, *4 n.4 (Pa. Super. Ct. 2020) (*unpublished*) (*quoting* Cagey v. Commonwealth, 179 A.3d 458, 463 (Pa. 2018)).

Applying the "occurrence rule," Plaintiff's negligence and breach of fiduciary duty causes of action accrued when Defendants rendered their legal services to Plaintiff and Ms. Zelikovich in 2014. However, application of the "discovery rule" is appropriate in a legal malpractice action because the invalidity of a postnuptial agreement would not be immediately apparent to a layperson. *see* Garcia v. Community Legal Services, 524 A.2d 980, 985 (Pa. Super. 1987).

Based on the undisputed facts asserted in the Pleadings, the latest date that the statute of limitations could possibly begin to run is June 29, 2016, the date when Plaintiff's counsel received the Family Court Order invalidating the post-nuptial agreement. Plaintiff's Second Amended Complaint at ¶ 17. Plaintiff cannot plausibly claim that he did not yet possess sufficient critical facts to be charged with notice that a wrong had been committed and that he may be entitled to redress after he was notified that the Family Court found the agreement drafted by Defendants legally unenforceable. The statute of limitations began to run on June 29, 2016 and expired on June 29, 2018. Plaintiff filed this legal malpractice action on June 29, 2020. The two-year statute of limitations bars Plaintiff's negligence and breach of fiduciary duty claims.

IV.     CONCLUSION

11

For the reasons stated above, the trial court requests this Honorable Court to affirm its Orders and deny Plaintiff's request to vacate the judgment against him and grant a new trial.

BY THE COURT

ANN M. BUTCHART, J.